# Wheeling.

HARNER *v.* PRICE *et al.*

Decided December 18, 1880.

1. Agreements made and acts done under a mistake of law are (if not otherwise objectionable) generally valid and obligatory.

2. A judgment by confession or otherwise will not be restrained by injunction on grounds purely legal, unless a defence at law has been prevented by fraud on the one side or ignorance of facts unmixed with negligence on the other.

3. An injunction to a judgment is not a writ of error at law, nor in the nature of such writ as a general rule, and as a general rule equitable proceedings by injunction do not lie to correct the irregularities and errors of courts of law, when such exist.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Monongalia, rendered on the 22d day of September, 1876, in a cause in said court then pending, wherein Phillip W. Harner was plaintiff and William Price, and George W. McVicker were defendants, allowed upon the petition of said Harner.

Hon. Charles S. Lewis, late judge of the second judicial circuit, rendered the judgment appealed from.

HAYMOND, JUDGE, furnishes the following statement of the case:

This is a case upon bill of injunction. It appears that on the 18th day of January, 1868, the plaintiff and

1880
Special Term.

Harner
v.
Price et al.

one William Hagans, as the securities of one George M. Hagans, made and signed their joint and several promisory notes, not negotiable, with the said George M. Hagans, the principal, to William Price for the sum of $1,720.25, payable one day after date, with interest from date, for money loaned at the date of said note by the said Price through his agent, William Wagner, to the said George M. Hagans; that the said George M. Hagans died in the latter part of December, 1873, to wit: about the 28th day of December, 1873; that the said George M. Hagans made several payments on said note during his life, but not in amount in the aggregate sufficient to cover the whole of the interest thereon by a small amount. It appears in fact, that the interest was paid up in full on said note annually up to and including the 11th day of May, 1872, and afterwards on the 6th day of January, 1873, the said George M. Hagans paid $100.00 by check on said note; this was the last payment made. It seems that one James C. McGrew and the said William Hagans were appointed by said George M. Hagans by his last will his executors, and that they qualified and acted as such executors. It further appears, that after the death of George M. Hagans, to wit, on the 27th day of February, 1874, the said Price brought his joint action of debt upon said note in the circuit court of Monongalia county against said William Hagans and James C. McGrew, executors of the estate of said George M. Hagans, deceased, and Philip W. Harner (the plaintiff) and said William Hagans, and the writ issued in said action was made returnable at the rules to be held in the clerk's office of said court on the first Monday of April thereafter. Said writ bears date the 27th day of February, 1874. It also appears, that on the day said writ was issued, and immediately afterward, the plaintiff (said Harner) in said clerk's office and in the presence of said Price and with his consent and in the presence of the clerk of said court and others made and executed a writing on the back of said writ, as follows:

1880
Special Term.

Harner
v.
Price *et al.*

" I accept service of the within summons, and waive service by copy or any further or other service, and confess judgment for the sum of eighteen hundred and seven dollars and sixteen cents and costs of suit, the same being the amount of the debt and interest aggregated to this date in the summons mentioned, this 27th day of February, 1874.

"PHILIP W. HARNER."

It appears that he, plaintiff, immediately upon the executing and making of said writing in the presence of said Price delivered the same to said clerk, that immediately after this the plaintiff in addition to said writing in the presence of and with the consent of said Price confessed judgment before the clerk in said case for the amount of the debt, interest and costs in said writing specified, which judgment so confessed is in these words, viz. :

" In the clerk's office of the circuit court of Monongalia county, West Virginia, on the 27th day of February, 1874, at ten o'clock and fifty-five minutes A. M., this day came as well the plaintiff by his attorney as the defendant, Philip W. Harner, in person, and the defendant, Philip W. Harner, acknowledged the plaintiff's action and confesses judgment for $1,807.16 and the costs. Therefore it is considered that the plaintiff recover against the said defendant, Philip W. Harner, the said sum of $1,807.16, with interest thereon from February 27, 1874, till paid, together with his costs herein expended.

'Teste: AUGUSTUS HAYMOND, *Clerk.*"
" Plaintiff's costs, $8.05."

It further appears by the return of the sheriff, that the said writ was executed on said William Hagans on the 1st day of April, 1874; but it does not appear, that the said writ was ever executed on the said executor McGrew, nor upon said William Hagans as executor. It further appears, that at rules in said clerk's office on the first Monday of April, 1874, the plaintiff dismissed

the said action as to the said executors of said George M. Hagans, upon the ground that the said executors were improperly joined with the surviving promisors, Philip W. Harner and William Hagans; and thereupon and then and there the said Price by his attorney filed in said clerk's office in the said case his declaration upon said note in the ordinary form against the said Philip Harner and William Hagans. Afterwards, to wit, on the 24th day of September, 1874, it appears, that the plaintiff and said William Hagans appeared before the court by their attorneys, and on motion of the defendant, William Hagans, the office-judgment had at the rules against him was set aside, and thereupon said William Hagans filed a special plea in writing, which is a plea of the statute of limitations of five years, and the plaintiff took time to consider thereof. Afterwards on the 21st day of September, 1875, the said Price by his attorney in open court replied generally to said plea, and thereupon issue was duly joined. It does not appear, that a common order or office-judgment was taken in the case against said Harner; but it does appear, that on the 23d day of September, 1875, the said Harner appeared in court to said case and offered to file therein a plea of the statute of limitations of five years in due form, and the plaintiff, Price, objected thereto and moved the court to reject the same, and the court did reject the same, because, as stated in the order, the said Harner had theretofore confessed judgment in the clerk's office of the court for the whole amount of the plaintiff's demand. It also appears, that afterwards and on the day and year last named an order was made and entered in said cause at law as follows, viz :

" At a circuit court continued and held for the county of Monongalia, at the court-house of said county, on the 23d day of September, 1875, this day came William Hagans, by his attorney, and the plaintiff was solemnly called, but failed to come and prosecute his suit; whereupon the plaintiff is nonsuited; and the defendant waiv-

ing damages, it is ordered, that the plaintiff pay to the defendant the costs by him about his defence expended, except an attorney's fee, which is also waived."

Afterwards, on the 31st day of October, 1874, the said Philip W. Harner filed his bill of injunction in the clerk's office of the circuit court of said county against said judgment and against said Price and George W. McVicker, sheriff of said Monongalia county. In this bill the plaintiff therein alleges, that said note was given for money previously due from said George M. Hagans to said Price and that shortly after the death of the said George M. Hagans, to wit: on the 27th day of February, 1874, the said Price instituted a suit on the said note in the circuit court of said county against the said executors as such and the said William Hagans and the plaintiff, and that on the day previous ·the said Price came to the house of plaintiff, who resides in the country some two miles from Morgantown, accompanied by a friend (one Jesse J. Fitch) and represented, that he had brought a suit, or was about to do so, on the note against the executors and William Hagans and plaintiff; that it was all right and he desired to save all parties all the costs he could, and that he desired plaintiff to go with him to Morgantown and confess a judgment, as it would be better for plaintiff, and it would save costs, if he would confess the judgment; and that plaintiff not suspecting there was anything wrong in the premises, and believing there was no defence to be or could be made by any of the defendants, and that all of them would confess the judgment or be made liable with him, replied to said Price and Fitch, that if it was all right for him to confess a judgment, he was willing to do so, as he did not wish to make unnecessary costs, and that he would accordingly go to town and attend to the matter on the next day; that the said Price and Fitch then left him and started to town; that plaintiff also went into town the next day, and when he arrived in town, he went to the store and business-house of said

George M. Hagans for the purpose of seeing the said executors in reference to the question of confessing a judgment on said note and ascertaining whether it would be right, and their purpose to do so, as represented by the said Price, who was then standing on the steps in front of said store-house, and that plaintiff informed him, that he wished to see the said executors about confessing the judgment, &c., before he did so, and was going into the store-room accordingly, and enquired of said Price, where they were, when he was informed by said Price, that he did not know, but the said executors, McGrew and William Hagans, were not then in town, as he believed, but that it was all right and urged plaintiff to go to the clerk's office and confess a judgment, and that plaintiff believing it was all right to do so, as represented by said Price, went with him to said office and confessed a judgment for the sum of $1,807.16, with interest and costs, it being the amount claimed to be due on said note, in the full belief from the acts and representations of said Price, that the other defendants would also confess a judgment or could be made liable with the plaintiff, and that no defence could be made to the action. The plaintiff files a copy of said judgment with his bill as an exhibit. The plaintiff further alleges in his bill, that about one hour after he confessed said judgment he learned to his great surprise, that the said note was in fact actually barred by the statute of limitations at the time he so confessed the judgment, and that the other defendants could and would plead the said statute and defeat the action against them, leaving the plaintiff solely liable for the whole debt by reason of the judgment he had been induced to confess by the fraudulent representations and conduct of the said Price; that when he so confessed the judgment, he did not remember or know the date of the said note, and had no idea that it was so barred, or that any defence could or would be made by the other defendants, plaintiff being an illiterate man having no experience or knowledge of legal proceedings,

and his sole object was to save costs to the estate of the said George M. Hagans, in accordance with the representations of the said Price and Fitch.

The plaintiff in his bill says, that he believes and charges, that it was well known to the said Price and Fitch before and at the time of said confession, that the said note was so barred, and that the other defendants would not confess judgment but intended to plead the statute of limitations and in fact defeat any recovery as against them on the said note; and that the sole object had in view by the said Price was to defraud and entrap plaintiff by inducing him to confess the judgment as hereinbefore explained. And plaintiff represents and charges, that at the time he came to town to see about confessing a judgment, and when he went to said Hagans's store-room to see the executors, before he made the said confession, the said executors were then in the said store-house in a back room, which fact was well known, as he believes and charges, to the said Price, who at the time stated, that they were absent from town, as he thought, and thus by such false and fraudulent misrepresentation prevented, as was his object and intention, the plaintiff from seeing them and hearing from them the facts in the premises, which would have prevented the plaintiff from confessing such judgment; that the plaintiff was induced to confess said judgment solely by the fraud and misrepresentations of the said Price. The bill further alleges, that after plaintiff so confessed, the said Price dismissed the suit as to the executors and continued it as to the said William Hagans, who has filed his plea of the statute of limitations, and the cause is still pending in said court; that execution has recently issued against plaintiff on the judgment so confessed by him, which is now in the hands of a deputy of George W. McVicker, sheriff of said county, who is about to levy on and sell plaintiff's property to satisfy said judgment; that it is now believed, that the estate of the said George M. Hagans will prove to be inadequate to pay his in-

debtedness after excluding the debts barred by the act of limitation. The bill after making the said party defendants and praying that they be compelled to answer, &c., prays, that the said Price and McVicker be perpetually enjoined from all further proceedings on the said judgment and for general relief.

It appears, that at rules on the first Monday of December, 1874, when the summons in this cause was returned executed upon the defendants, Price and McVicker, the defendant Price appeared and filed his answer to the plaintiff's bill, to which the plaintiff replied generally.

The said Price in his said answer states and replies to the bill substantially as follows: That on and before the 18th day of January, 1868, he had about $2,000.00 on deposit in the bank at Morgantown, of which William Wagner was the cashier, and which money he had authorized the said Wagner to loan out for him on good security; that said Wagner did accordingly loan out of said money for respondent to said George M. Hagans in his lifetime, to wit, on the said 18th day of January, 1868, the sum of $1,720.25, for which sum so loaned he on the same day took the joint and several promissory note of the said George M. Hagans, P. W. Harner and William Hagans, the two last named being sureties, which note bears date the day and year last aforesaid, and became due one day after date with interest from date, and which with the endorsements on the back thereof is made a part of the answer; that the said Wagner soon afterwards handed the said note over to respondent with the remark, that the said note was a good one, and that the said sureties were both wealthy and honorable men;—that the interest on said note was from time to time paid in full to the 11th day of May, 1872, with a further credit of $100.00 paid the 6th of January, 1873, as will more fully appear by the said endorsements written on the back of said note; that it is not true that said note was executed for money previously due from said George M. Hagans to respondent,

but was for money *then loaned* him as aforesaid ; that the plaintiff knew of the payments endorsed on the back of said note, which were made by said George M. Hagans, and that plaintiff knew that said note was not paid but remained unsatisfied (except as to said payments of interest) at the time of said Hagans's death, and at the time he confessed the judgment in the bill mentioned.

He admits that said McGrew and William Hagans have qualified and are acting as executors of the estate of said George M. Hagans, deceased ; that soon after the death of said George M. Hagans, he, respondent, learned from rumor, that said estate might not and probably would not prove solvent, and thereupon he came to Morgantown a distance of some fifteen miles from his home, to see about his said claim, and meeting with said executors in town, presented said note to them and requested payment thereof, but received no satisfactory answer from them ; whereupon he became still more doubtful of the solvency of said estate, and determined to see the sureties to said note about it and to press the payment thereof, and not being personally acquainted with the plaintiff and not knowing where he lived, he met with Jesse J. Fitch, an old and esteemed acquaintance, who resided in Morgantown, and requested said Fitch to accompany him to see the plaintiff, which he consented to do and did do, but for no other purpose on the part of either than to enable him (respondent) the better to find the plaintiff's residence and to introduce him (respondent) to plaintiff ; that accordingly he and said Fitch on the afternoon of the 26th day of February, 1874, rode to the dwelling of said Harner, some two or three miles from said town, and not finding him at home returned, and on their way home met with plaintiff on the road. Whereupon after being introduced by said Fitch, who was an old acquaintance of said Harner, he, respondent, named to said Harner the object of his call or interview, and specially stating, that he held a note with his name to it, which he, respondent,

wished to have paid or settled; that plaintiff replied: "Yes, that Hagans note," but that he was not then just prepared to pay it; that he, respondent, replied, that he had seen the executors of Hagans about it, and they had not given him the satisfaction about it he thought they ought, or words of like import, and that he, respondent, was determined the matter should be closed up in some way satisfactory to him amicably, or he would bring suit on the same at once; and at the same time remarked to plaintiff, in substance at least if not in the precise words, that if he was not prepared to pay the note then, if he would come into the court-house and confess judgment for the amount due on said note, he, respondent, would give him further time to pay it; that to this proposition plaintiff replied, that he knew that said debt was just, and that he was as much bound to pay it, as if it was his own debt alone, and that he would come to town on the next morning and confess a judgment for the same; that then he, respondent, and said Fitch returned to Morgantown, and then not knowing or even dreaming of any trouble or difficulty in getting a judgment on said note either against the plaintiff, or his co-security or the said executors, gave said note to Joseph Moreland, a young lawyer of said town, to bring suit thereon by the time the plaintiff came in to confess as agreed, and who did accordingly, on the next day, to wit: on the 27th day of February, 1874, as such attorney bring suit thereon in the circuit court of said county against the said sureties and said executors jointly, and had the summons issued accordingly. Whereupon the plaintiff in accordance with his said agreement so to do, and without any solicitation or importunity on his part or of any one else for him, otherwise than as before stated, came into the clerk's office, in which said suit was pending and accepted service of the summons in the cause, and after seeing the said note, which was then present, and seeing that an accurate calculation of the amount due on said note was made by A. Haymond, the clerk of said court, and an old friend of

the said Harner, who found said amount to be $1,807.16 ; that for said sum the plaintiff then and there confessed a judgment before said clerk in his office and for costs of suit, as appears by an official copy of said judgment filed with the answer, and also by the endorsement on the back of the original summons in said cause at law, subscribed by and with the genuine name and signature of the plaintiff at the time of said confession ; that he, respondent, utterly and positively denies any and all fraud or fraudulent intent or purpose or false or fraudulent representations or devices whatever on his part or that of said Fitch or of any one else, at his instance, to induce or procure the plaintiff to make said agreement to confess, or to accept the service of the said summons, or to suffer or make the confession or confessions aforesaid, as charged in the bill or otherwise ; but on the contrary he avers the truth to be, that the plaintiff did so freely, voluntarily and of his own accord, at the request only of him, respondent, as hereinbefore stated ; and that each and all the allegations, intimations or insinuations of the bill to the contrary are absolutely and unqualifiedly false ; that to be more specific he, respondent, positively denies the allegation of the bill to the effect that the plaintiff agreed to come in and confess judgment on said note, " if it was all right," and avers the truth to be, that plaintiff did then and there say, that it (the said note meaning) "was all right," and that he considered himself as much bound to pay it, as if it was his own individual debt, and unconditionally promised to come in the next morning and confess as aforesaid ; that he, respondent, admits, that he then and still does believe said note to be right and just, but positively denies, that he then knew or believed, that said note was in fact barred by the statute of limitations, nor does he believe that the said Fitch then knew or believed, that it was so barred, nor did respondent in fact know or believe the same was so barred, until a day or two after the said confession ; that he, respondent, always

believed up to that time, that the credits of payments endorsed on said note would prevent the bar of the statute; that he also positively denies, that he at any time or place made or used any false or fraudulent reppresentations or devices to the plaintiff to mislead him or to prevent him from suing the said executors about said note, before he so confessed as aforesaid or afterwards, or that he could by any possibility, as he believes, have deceived or misled the plaintiff in the premises, as charged in the bill or otherwise; he denies, that he saw or spoke to the plaintiff on the morning the said judgment was confessed at or on the store-house steps of the said Hagans, or that he then or there or elsewhere told the plaintiff, or gave him to understand, that said executors were not in town at that time, or that he in any way or manner prevented or tried to prevent the plaintiff from seeing them, but his, respondent's, recollection is, that the plaintiff that morning and before, or possibly the day after he so confessed, at or near Dr. Lazier's drug-store, in Morgantown, remarked to him, respondent, that he, plaintiff, had seen said executors about the matter, to wit: the confession of said judgment, and that said executors had said to him, that they would not then confess, but that he, plaintiff, could do as he thought proper in the matter; that he does not know whether the plaintiff did in fact know at the time he so confessed judgment, that the note was in fact or law barred or not; nor does he, respondent, now believe, that if plaintiff had then so known, he was then prepared to or would have pleaded the statute against him, respondent, but on the contrary he believes, that the plaintiff is now prompted to do so or to ask the relief prayed in the bill by his said co-security, Wm. Hagans, and perhaps by the said executors as such, in order, as they believe, to make the plea of the statute of limitations now filed by the said William in the suit pending against him available, under an agreement or understanding, that the said Harner and the said William

Hagans and perhaps also of the said executors and heirs at law of the said George M. Hagans, deceased, as he, respondent, believes, to indemnify and save him, the plaintiff, harmless in the premises; that he, respondent, admits that said suit at law was dismissed at April rules as to said executors and retained as to said William Hagans as such co-security, and that said William Hagans has since, to wit, at the September term of said court pleaded the statute of limitations, but he denies, that said executors were made parties to said suit or dismissed therefrom for the purpose of defrauding or deceiving the plaintiff, or to procure him to confess judgment, but he avers the truth to be, that said executors were so made parties to said suit for the sole reason that respondent then believed that it was right and proper so to do, as did also the said attorney, Moreland; and that as to the executors it was so dismissed, because he, respondent, was, soon after said suit was instituted, informed by older and more experienced counsel, on whose advice he relied, that the executors could not properly be joined in the same suit with the living sureties, and for no other cause whatever; he denies that he before or at the time of the institution of said suit, or of the confession of the said judgment by the plaintiff knew, that either the said William Hagans as such co-security, or the said executors as such, would or could plead the said statute, or that he in any wise induced or intended to induce the plaintiff to believe, that they would not or could not plead the said statute; and that if the plaintiff could have pleaded the said statute at the time he so confessed, or afterwards, and failed to do so, plaintiff has nothing to blame for so doing but his then honest instincts, and that the plaintiff committed no crime by failing or refusing to plead such plea to an honest contract; that in accordance with his agreement with plaintiff at the time he so agreed to confess judgment as aforesaid, he, respondent, met plaintiff a day or two after said judgment

was confessed and at the request of plaintiff agreed not to issue execution on said judgment for six months from its date for the purpose or reason—first, that plaintiff said he was not prepared to pay sooner, and second, to enable plaintiff or respondent to realize a part or the whole of said money of said co-security William Hagans, or the estate of said George M. Hagans, deceased, as it was then suggested and well understood that said executors contemplated making or paying a dividend within a short time; that said Harner was then informed that said suit then pending was to be dismissed as to the executors, but retained as to said William Hagans as co-security as aforesaid; that it was then and there also agreed by and between the plaintiff and him, respondent, that said Harner should have the privilege at once, or at any time before said confessed judgment was satisfied, of instituting a suit on said note against said executors in the name of him, respondent, but at the cost and charges of plaintiff, and in fact for his benefit, so as to save himself if possible; and plaintiff did then and there employ counsel to bring such suit, as he, respondent, is informed, and he avers that in all he has done or said in the premises, he has at all times acted in the most perfect good faith towards the plaintiff and all parties concerned, and that his only object and purpose in asking or desiring plaintiff to confess said judgment was to fix a lien on the land for the same, and thus put it out of his power, should he attempt to do so, to convey away his land to the detriment of his aid claim.

He admits, that at the expiration of said six months from the date of said judgment, the plaintiff failing to pay the said judgment or debt and showing a disposition, prompted as aforesaid as he, respondent, believes, to contest and repudiate said obligation or judgment, he did have an execution issued on said judgment and placed in the sheriff's hands to be levied, and that he is desirous and determined to make his money, if he can, so soon as the injunction herein awarded shall be dissolved, which

he prays may be speedily done by decree. And he prays to be hence dismissed with his proper costs, &c.

It will be remembered, that the plaintiff here appeared to said action at law and offered to file the plea of the statute of limitations, which was rejected, on the 23d day of September, 1875, and that on the same day and year, judgment of nonsuit was entered in the cause, which was over a year after the bill in this cause was filed, and while this cause was pending in the court below.

A number of depositions were taken and filed in the cause by the plaintiff and the defendant Price, and they are too voluminous to copy herein. Under the circumstances I must content myself with stating in the opinion what is proven and what is not proven by the depositions and by referring to such of the depositions of witnesses, as I deem necessary and proper. On the 22d day of September, 1876, the said circuit court made and entered a decree therein as follows:

"This cause came on this day to be heard on the motion to dissolve the injunction heretofore awarded in the cause and for final hearing on the bill and answer of defendant, William Price, and replication thereto, subpoena duly executed on defendant, George W. McVicker, &c., and decree *nisi*, and he failing to answer, the same as to him is taken for confessed, depositions and exhibits and was argued by counsel. On consideration whereof, it is adjudged, ordered and decreed, that the said injunction be, and the same is hereby wholly dissolved, and the plaintiff's bill dismissed; and the defendant, William Price, relinquishes his right to damages under the 12th section of chapter 133 of the Code of West Virginia. And it is further adjudged, ordered and decreed, that the defendants recover against the said Harner their costs about their suit herein expended."

From and to this decree the said plaintiff, Harner, upon his petition and assignment of error obtained from one of the judges of this court an appeal and *supersedeas*;

and thus the said decree has been brought before this Court for review and determination.

*Berkshire & Sturgiss*, for appellant, cited the following authorities:

1 Story Eq. §§ 123, 128, 130, 131, 133, 134, 137 and note 1, p. 154 note 2; *Id.* §§ 139, 140, 142, 143, 144, 145, 151, 154, 155, 162; 3 Gratt. 184; 7 Gratt. 86; 12 ·Gratt. 628; Story Eq. §§ 116–123, 128.

*P. H. Keck*, for appellee, relied on the following authorities:

1 Story Eq. Jur. §§ 197, 200, 204, 207, 210–215, 137, 138, 147–150; *Id.* §§ 116, 136, 137 and note 1; 1 Pet. 15; 12 Pet. 32, 55; 1 Story Eq. § 138; Code ch. 131, § 19; *Id.* ch. 125, § 52; 19 Gratt 1; 2 W. Va. 83; 21 Gratt. 280; 9 W. Va. 415; 27 Gratt. 252.

HAYMOND, JUDGE, announced the opinion of the Court:

In deciding this case it is necessary and proper to consider and discuss to some extent, how far a party is entitled to relief in equity from an act done by him under a mistake of law or fact. And first I will consider the effect of a mistake of law and afterwards a mistake of fact or facts. Agreements entered into in good faith but under a mistake of the law are generally held valid and obligatory upon the parties. 1 Story Eq. Jur. § 113, note 3. Mr. Story in the same work at § 116 in referring to the said § 113 says: " In a preceding section it has been stated that agreements made and acts done under a mistake of law are, if not otherwise objectionable, generally held valid and obligatory. The doctrine is laid down in this guarded and qualified manner, because it is not to be disguised, that there are authorities which are supposed to contradict it." Mr. Story in § 119 of the same work says: " The case of *Evans* v. *Llewellyn*, is expressly put in the decree upon the ground of surprise, the con-

veyance having been obtained and executed by the plaintiffs improvidently." It was admitted, that there was no sufficient proof of fraud or imposition practiced upon the plaintiff, though the facts might well lead to some doubt on that point, and the plaintiff was certainly not ignorant of any of the facts, which respected his rights. The Master of the Rolls (Sir Lloyd Kenyon, afterwards Lord Kenyon,) said: "The party was taken by surprise. He had not sufficient time to act with caution; and therefore, though there was no actual fraud, it is something like fraud; for an undue advantage was taken of his situation. I am of opinion, that the party was not competent to protect himself; and therefore this court is bound to afford him such protection; and therefore these deeds ought to be set aside as *improvidently* obtained. If the plaintiff had in fact gone back, I should have rescinded the transaction."

In § 120 of same work Judge Story says: "The most general class of cases relied on as exceptions to the rule, is that class, where the party acted under a misconception or ignorance of his title to the property, respecting which some agreement has been made or conveyance executed. So far as ignorance in point of fact of any title in the party is an ingredient in any of these cases, they fall under a very different consideration. But so far as the party knowing all the facts, has acted upon a mistake of the law, applicable to his title, they are proper to be discussed in this place. Upon a close survey most, although not all, of the cases in the latter predicament will be found to have turned, not upon the consideration of a mere mistake of law, stripped of all other circumstances, but upon an admixture of other ingredients, going to establish misrepresentation, imposition, undue confidence, undue influence, mental inability, or that sort of surprise, which equity uniformly regards as a just foundation for relief."

Judge Story, in speaking of *Lansdown* v. *Lansdown* in § 125 of his said work says: "This case has been

questioned on several occasions, and is certainly open to much criticism. It appears to have been a case of famiily dispute and compromise, made by parties equally innocent, and upon a doubtful question of title under a mutual mistake of the law. Under such circumstances, there is great difficulty in sustaining it in point of principle or authority. It was probably decided by Lord King on the untenable ground already suggested. If indeed it proceeded upon the ground of undue confidence in Hughes's opinion, or was induced by his undue persuasions and influence, such a misrepresentation of the law by him might, under such circumstances, furnish a reason for relief. But that does not appear in any report of the case." But see further in regard to this case in note 2 of said section 125, and *Hunt* v. *Rousmaniere* 8 Wheat. 214, 215 and 1st Pet. Sup. C. R. 15 and 16. "The distinction between cases of mistake of a plain and settled principle of law, and cases of a mistake of a principle of law, not plain to persons generally, but which is yet constructively certain, as a foundation of title, is not of itself very intelligible, or practically speaking very easy of application, considered as an independent element of decision. In contemplation of law all its rules and principles are deemed certain, although they have not, as yet, been recognized by public adjudications. This doctrine proceeds upon the theoretical ground that *Id certum est, quod certum reddi potest*; and that decisions do not make the law, but only promulgate it. Besides : what are to be deemed plain and settled principles ? Are they such, as have been long and uniformly established by adjudications, only ? Or is a single decision sufficient? What degree of clearness constitutes the line of demarkation ? If there have been decisions different ways at different times, which is to prevail?" &c. 1 Story Eq. Jour. § 126. See the reasoning of Judge Kent in *Lyon* v. *Richmond*, 2 Johns. Ch. R. 60. See also upon this subject Story's Eq. Jur. §§ 127, 128, 129, 130, 131,

132, 133. "Cases of surprise, mixed up with a mistake of law, stand upon a ground peculiar to themselves and independent of the general doctrine," says Judge Story in his same work § 134.

"There are also cases of peculiar trust, and confidence, and relation between the parties, which give rise to a qualification of the general doctrine." Same author § 135. "There are also some other cases, in which relief has been granted in equity, apparently upon the ground of mistake of law. But they will be found, upon examination, rather to be cases of defective execution of the intent of the parties from ignorance of law, as to the proper mode of framing the instrument." Same author § 136.

Again Judge Story in same work at § 137, says: " We have thus gone over the principal cases, which are supposed to contain contradictions of, or exceptions to, the general rule, that ignorance of the law, with a full knowledge of the facts, furnishes no ground to rescind agreements, or to set aside solemn acts of the parties. Without undertaking to assert that there are none of these cases, which are inconsistent with the rule, it may be affirmed, that the real exceptions to it are very few, and generally stand upon some very urgent pressure of circumstances. The rule prevails in England in all cases of compromises of doubtful, and perhaps in all cases of doubted rights; and especially in all cases of family arrangements. It is relaxed in cases, where there is a total ignorance of title, founded in the mistake of a plain and settled principle of law, and in cases of imposition, misrepresentation, undue influence, misplaced confidence, and surprise. In America, the general rule has been recognized, as founded in sound wisdom and policy, and fit to be upheld with a steady confidence ; and hitherto the exceptions to it, if any, will be found not to rest upon the mere foundation of a naked mistake of law, however plain and settled the principle may be,

nor upon mere ignorance of title, founded upon such mistake."

The general rule seems to be affirmed in *Shotwell* v. *Murray*, 1 Johns. Chy. 512, 515; *Lyon* v. *Richmond*, 2 Johns. Chy. 51, 60; and *Storrs* v. *Barker*, 6 Johns. Chy. 169, 170.

In *Hunt* v. *Rousmaniere*, 8 Wheat. 211, 214, 215, the court said: "Although we do not find the naked principle, that relief may be granted on account of ignorance of the law, assented to in the books, we find no case, in which it has been decided, that a plain and acknowledged mistake in law is beyond the reach of equity." But when the case came again before the court upon appeal, in 1 Pet. Sup. C. 15, the Court said: "We hold the general rule to be, that a mistake of this character, (that is, a mistake arising from ignorance of the law), is not a ground for reforming a deed, founded on such mistake, and whatever exceptions there may to this rule, they are not only few in number but they will be found to have something peculiar in their character." But the court added at page 17, that it was not their intention to lay it down, that there may not be cases, in which a court of equity will relieve against a plain mistake, arising from ignorance of law. In the case of *Marshall* v. *Collett*, 1 You. & Coll. 238, Lord Chancellor, Baron Abinger, said, that for mistake of law, equity would not set aside a contract. See also *Cockerville* v. *Cholmeley*, 1 Russ. & M. 418; and *McCarty* v. *Decaix*, 2 Russ. & M. 614.

The question again came under review before the Supreme Court of the United States in the case of the *Bank of the United States* v. *Daniel*, 12 Pet. 32, 55, 56, where the main question was, whether a mistake of law was relievable in equity, it being stripped of all other circumstances; and it seems the court held, that it was not. In this case the court said: "That mere mistakes of law are not remediable, is well established, as was declared by this Court in *Hunt* v. *Rousmaniere*, 1 Pet. 15; and we can only repeat what was there said: 'that what-

. ever exceptions there may be to the rule, they will be found few in number, and to have something peculiar in their character; and to involve other elements of decision. * * Testing the case by the principle, that a mistake or ignorance of the law, forms no gound of relief from contracts fairly entered into, with a full knowledge of the facts, and under circumstances repelling all presumptions of fraud, imposition or undue advantage having been taken of the party, none of which are chargeable upon the appellants in this case, the question then is, were the complainants entitled to relief? To which we respond decidedly in the negative."

Under this decision so far as the courts of the United States are concerned the question seems to be settled and at rest. Judge Story in the same book § 138 says: "It is a matter of regret, that in the present state of the law it is not practicable to present in any more definite form the doctrine respecting the effect of mistakes of law, or to clear the subject from some obscurities and uncertainties, which still surround it. But it may be safely affirmed upon the highest authority, as a well established doctrine, that a mere naked mistake of law, unattended with any such special circumstances, as have been above suggested, will furnish no ground for the interposition of a court of equity; and the present disposition of courts of equity is to narrow rather than to enlarge the operation of exceptions. It may however be added, that where a judgment is fairly obtained at law upon a contract, and afterwards upon more solemn consideration of the subject the point of law, upon which the cause was adjudged, is otherwise decided, no relief will be granted in equity against the judgment upon the ground of mistake of the law; for that would be to open perpetual sources of renewed litigation."

From what has preceded I think it may safely be affirmed, that agreements made and acts done under a mistake of law, if not otherwise objectionable, are gen-

erally valid and obligatory. High on Injunctions, §
124; *Mum* v. *Rucker*, 10 Gratt. 506.

I now proceed to enquire and consider as to mistakes
as to questions of fact. At § 140 of 1 Story's Eq.
Jur. 5 ed., it is said : " In regard to the other class of
mistakes, that is, mistakes of fact, there is not so much
difficulty. The general rule is, that an act done, or con-
tract made, under mistake or ignorance of a material
fact, is voidable and relievable in equity. The ground
of this distinction between ignorance of law and ignor-
ance of fact seems to be, as every man of reasonable un-
derstanding is presumed to know the law, and to act
upon the rights, which it confers or supports, when he
knows all the facts, it is culpable negligence in him to
do an act, or to make a contract, and then to set up his
ignorance of law as a defence. The general maxim
here is, as in other cases, that the law aids them, who
are vigilant, and not those who slumber over their rights.
And this reason is recognized as the foundation of the
distinction, as well in the civil law as in the common
law. But no person can be presumed to be acquainted
with all matters of fact ; neither is it possible by any de-
gree of diligence.in all cases to acquire that knowledge ;
and therefore an ignorance of fact does not import cul-
pable negligence. The rule applies, not only to cases
where there has been a studied suppression or conceal-
ment of the facts by the other side, which would amount
to fraud ; but also to many cases of innocent ignorance
and mistake on both sides. So, if a party has *bona fide*
entirely forgotten the facts, he will be entitled to relief,
because under such circumstances he acts under the
like mistake of the facts, as if he had never known them."

"The rule, as to ignorance or mistake of facts entitling
the party to relief, has this important qualification," (says
Judge Story at § 141), "that the fact must be material to
the act or contract, that is, that it must be essential to
its character, and an efficient cause of its concoction.
For though there may be an accidental ignorance or

mistake of a fact; yet if the act or contract is not materially affected by it, the party claiming relief will be denied it." "In cases of mutual mistake going to the essence of the contract it is by no means necessary, that there should be any presumption of fraud. On the contrary, equity will often relieve, however innocent the parties may be." Same book § 142. See also §§ 143, 143 a, 143 b, 144, 144 a, 145. "It is not however sufficient in all cases to give the party relief, that the fact is material; but it must be such, as he could not by reasonable diligence get knowledge of, when he was put upon enquiry. For, if by such reasonable diligence he could have obtained knowledge of the fact, equity will not relieve him; since that would be to encourage culpable negligence. Thus if a party has lost his cause at law from the want of proof of a fact, which by ordinary diligence he could have obtained, he is not relievable in equity; for the general rule is, that if the party becomes remediless at law by his own negligence, equity will leave him to bear the consequence." Same book § 146. "Nor is it in every case, where even a material fact is mistaken or unknown without any default of the parties, that a court of equity will interpose. The fact may be unknown to both parties, or it may be known to one party and unknown to the other. If it is known to one party and unknown to the other, that will in some cases afford a solid ground for relief, as for instance, where it operates as a surprise or a fraud upon the ignorant party. But in all such cases the ground of relief is, not the mistake or ignorance of material facts alone, but the unconscientious advantage taken of the party by the concealment of them. For if the parties act fairly, and it is not a case, where one is bound to communicate the facts to the other upon the ground of confidence or otherwise, there the court will not interfere. Same book § 147.

Judge Story at § 148 also says: "And it is essential, in order to set aside such a transaction, not only that an

advantage should be taken; but it must arise from some obligation in the party to make the discovery; not from an obligation in point of morals only, but of legal duty. * * * Equity, as a practical system, although it will not aid immorality, does not affect to enforce mere moral duties. But its policy is to administer relief to the vigilant and to put all parties upon the exercise of a searching diligence. Where confidence is reposed, or the party is intentionally misled, relief may be granted; but in such a case there is the ingredient of what the law deems a fraud."

"A like principle applies to cases, where the means of information are open to both parties, and where each is presumed to exercise his own skill, diligence and judgment in regard to all extrinsic circumstances. In such cases equity will not relieve." Same book § 149. "In like manner, where the fact is equally unknown to both parties, or where each has equal and adequate means of information, or where the fact is doubtful from its own nature, in every such case, if the parties have acted with entire good faith, a court of equity will not interpose. For in such cases the equity is deemed equal between the parties; and when it is so, a court of equity is generally passive and rarely exerts an active jurisdiction." Same book § 150.

"The general ground, upon which all these distinctions proceed is, that mistake or ignorance of facts is a proper subject for relief, only when it constitutes a material ingredient in the contract of the parties and disappoints their intention by a mutual error, or where it is inconsistent with good faith and proceeds from a violation of the obligations, which are imposed by law upon the conscience of either party. But where each party is equally innocent, and there is no concealment of facts which the other party has a right to know, and no surprise or imposition exists, the mistake or ignorance, whether mutual or unilateral, is treated as laying no foundation for equitable interference. It is strictly

*damnum, absque irjuria.*" Same book § 151. "The true

definition (says Judge Story, at § 207 of same book), then, of undue concealment, which amounts to a fraud in the sense of a court of equity, and for which it will grant relief, is the non-disclosure of those facts and circumstances, which one party is under some legal or equitable obligation to communicate to the other, and which the latter has a right, not merely in *foro conscientiæ*, but *juris et de jure*, to know."

In *Warren et al.* v. *Branch et al.* 15 West Va. 21, Judge Green in delivering the opinion of the Court at pp. 34, 35 and 36 says: " We concur with Potter, J., in his statement in the case of *Atlas Bank* v. *Brownell et al.* 9 R. I. 174, that Judge Story in his equity jurisprudence states the doctrine with reference to the cases, in which concealment of facts by a creditor will vitiate the contract of a surety of a debtor, much more strongly than the decided cases will warrant. We cannot draw from these decisions the conclusion he draws, that in the case of a surety concealment of facts, which go to increase his risk, amounts to a fraud on the surety ; and the omission to disclose such is equivalent to an affirmation that the facts do not exist. See Story's Eq. Jur. §§ 214, 215, 324 and 383. Our conclusion is, that unless enquired of by the surety a creditor is under no obligation to disclose facts in no manner connected with the business which is the subject of the suretyship, though such facts would probably have a decided influence on the surety in entering into, or declining to enter into, his contract of suretyship. * * * * So too the insolvency of the principal need not, though known to the creditor, be disclosed to the surety, when no enquiry is made by him. If a material fact connected with the contract of suretyship, which might influence the surety in entering into the contract, is fraudulently concealed with a view to benefit the creditor, such concealment though no enquiry has been made by the surety, would vitiate the contract of suretyship and discharge the surety. * * * *·

But if the surety made no enquiry on the subject, and the failure to disclose the fact, that the money borrowed or a portion of it was to be applied to the payment of an old debt due the creditor, was not induced by the belief on the part of the creditor, that if disclosed, he would not sign the bond as surety, then such failure to communicate this fact, not being fraudulent, does not vitiate the contract and the surety would be held bound." See also upon the subject of mistake, &c., *Irick and wife* v. *Fulton's ex'rs*, 3 Gratt. 193; *Ross* v. *McLaughlin*, 7 Gratt. 86; *French* v. *Towns*, 10 Gratt. 513; *Gaw* v. *Hoffman*, 12 Gratt. 628.

The principles of law governing courts of equity generally, to which I have referred, and authorities cited seem to apply to contracts, and have some bearing upon the questions discussed in this cause before us by counsel, and many of them were cited by the counsel on both sides. **Syllabus 2.** "It may be laid down," says High on Injunctions, § 125, " as a general rule, that ignorance of important facts material to the establishing of a defence to the action at law, will in the absence of *laches* on the part of the defendant warrant a court of equity in extending a relief by injunction against the judgment." But, in *Mum* v. *Rucker*, 10 Gratt. 506, it was held as follows: " 1. An injunction to a judgment at law will not be sustained where defendant at law has failed to make his defence at law from ignorance of the nature of the proceeding against him, and a misapprehension of the steps it was necessary to take in order to subject him. 2. The mere averment by a plaintiff in his bill asking for an injunction to a judgment at law, of the facts constituting his excuse for not defending himself at law, is not sufficient, he must prove them."

In *Shields et al.* v. *McClung et al.*, 6 W. Va. 79, it was held : " 3. That a party to whom a day and opportunity have been allowed to make his defence against a demand set up against him in a court at law, but who has wholly failed to avail himself of them will not be entertained in

the court of chancery on a bill seeking relief against the judgment which has been rendered against him in consequence of his default, upon grounds which might have been successfully taken in the court of law, unless some reason founded on fraud, accident, surprise, or some adventitious circumstance beyond the control of the party be shown why the defence was not made in that court."

In *Smith* v. *McLain*, 11 W. Va. 654, it was held by this Court: " 2. A judgment will not be restrained by injunction on grounds purely legal, unless a defence has been presented at law by fraud on the one side, or ignorance unmixed with negligence. 3. A surety cannot rely on his ignorance of a substantial defence arising out of transactions between the plaintiff in the common law suit and the principal, as a reason for opening a judgment against the surety, unless he alleges in his bill and shows by evidence, that he took proper measures to ascertain the true state of the case, and prepare his defence in the common law action, or that he was prevented by circumstances which rendered it impossible to take such measures."

These cases furnish some safe criteria or principles as to *laches* in a large class of injunction-cases, similar in some of their aspects, but perhaps not altogether, to the case at bar.

High on Injunctions at §§ 165, 166, says: " In the absence of fraud or deception an injunction will only be allowed against a judgment which complainant has suffered to go against him by default. And where one has negligently permitted judgment to go against him by default, such negligence is sufficient to prevent him from obtaining the aid of an injunction against the judgment. Indeed in a case of default, a court of equity will refuse to consider the merits of the case any further than the question of complainant's negligence in asserting his rights at law, and no sufficient excuse appearing for his having neglected to defend at law, the injunction will be refused. Nor will the proceedings be enjoined mere-

ly because plaintiff obtained more relief than he was entitled to by his action, there being no misrepresentation or deception by which defendants were in any way misled. * * * With regard to judgments by confession, as in the case of judgments by default, a court of equity will not ordinarily interfere in the absence of fraud or collusion. And where a defendant has voluntarily and freely confessed judgment, without fraud or deception by the opposite party, he is thereby estopped from enjoining the proceedings on the ground of an equity existing anterior to his confession of judgment, &c."

In the case at bar it appears that something more than five years had elapsed between the time said promissory note became due and payable and the date of the suit at law and of the confession of the said judgment thereon by the plaintiff, Harner, and from all that appears in the cause at the date of the confession of said judgment a recovery upon said note against the plaintiff, Harner, could not have been had in an action at law if he had chosen to avail himself of the benefit of the statute of limitations instead of confessing judgment thereon as he did. It also appears that the said note was just and unpaid for the amount for which said judgment was confessed, and that the plaintiff knew such to be the fact, at the time he confessed said judgment. The said promissory note was joint and several and the plaintiff might have been sued thereon separately. And although said note was barred by the statute of limitations under the 8th and 9th sections of chapter 104 of the Code of this State of 1868 it was at the time the judgment was confessed by Harner competent for him by promise of payment of the debt in writing signed by him, or by an acknowledgment in writing signed by him, from which a promise of payment might be implied, to bind himself for the payment thereof, and upon such writing an action would lie and a recovery could have been had against him. And indeed under said 8th section, in such case an action could be brought on the original note, and if

he pleaded the statute of limitations, in answer to such plea, the plaintiff might successfully reply such promise in writing, and that the action had been brought within five years thereafter. This being so, of course it cannot be successfully claimed, as it seems to me, that a debtor may not properly confess a judgment for a just debt, after it is barred by the statute of limitations; and there is nothing inequitable in such confession in such a case in the absence of fraud or fraudulent misrepresentation or concealment on the part of the creditor in the procurement of such confession, to require the interference of a court of equity at the instance of the debtor to prohibit the collection of the judgment, because the debt was barred by the statute of limitations, at the time the action was brought and judgment confessed.

I have carefully read and re-read all the evidence in the cause and considered and analyzed it, as best I could, and although it is somewhat conflicting as to some material facts, yet my conclusion is, that the evidence fails to establish the allegations of fraud or collusion against the defendant, Price, which are alleged in the bill; but on the contrary, I think, the preponderating weight of the evidence strongly supports and sustains the answer of defendant Price to such allegations of fraud and collusion; and the answer to the allegations of fraud, collusion, &c., contained in the bill seems to be full and complete in denial of all these allegations. I think it is probable from the whole case, that the plaintiff, at the time he confessed the judgment, did not remember when the said debt became payable, and that it may not have occurred to him that the statute of limitations could be successfully pleaded against a recovery of said debt; but be this as it may, it appears abundantly in this case, that the plaintiff had every opportunity of informing himself fully as to this matter of fact as well as law. The matter of law he is presumed to know, and his ignorance, (if in fact he was ignorant of the law) is not, and can not avail as an excuse in this case. The note

was not concealed from his view and inspection—it appears that it was produced by defendant Price in the clerk's office, in the presence of the plaintiff, and that it lay open on the table in the clerk's office in the presence and view of the plaintiff and close to him, and open to the inspection of plaintiff and others for perhaps a half hour before he confessed the judgment, and that while the note was so lying open on the table in the presence and view of the plaintiff, the clerk, the defendant, Price, and others, two separate calculations of the amount due on said note after deducting the credits on the back of the note were made in the presence of the plaintiff, one by defendant Price and the other by the clerk, the result of which were announced to the plaintiff in the clerk's office just before he confessed the judgment. Every reasonable opportunity appears to have been afforded the plaintiff to inform himself as to the date of the note, when it was payable, and whether more than five years prior to the date of the suit and confession, and still he failed to avail himself thereof.

It does not appear, and in fact is not pretended, that the plaintiff enquired of defendant, Price, or of any other person prior to his confessing the judgment as to the date of said note, or how long it had been due and payable, or whether it was barred by the statute of limitations, although he had every opportunity to do so in the clerk's office before he confessed the judgment. If therefore the plaintiff was ignorant, at the time he confessed the judgment, of the time at which the note became due and payable, and that more than five years had elapsed since it became due and payable, it was the result of his own gross negligence and *laches,* and not to be attributed to the fault of the defendant, Price. It clearly appears, that the defendant, Price, informed the plaintiff on the day before the judgment was confessed, that he had seen the executors of Hagans, deceased, one of whom was a co-security with the plaintiff, about the note, and that they had not given him satisfaction about it as he

thought they ought to have done, thus putting the plaintiff on his guard, as it were. At the time plaintiff confessed said judgment, it appears that the said executors were in the town at their usual place of business, but a short distance from the clerk's office, and that usual place of business was known to the plaintiff. He had ample opportunity to see and consult them, but failed to avail himself of it. It is true, that the plaintiff claims that the defendant prevented him from seeing the executors before he confessed judgment by fraudulently and falsely representing to him that they were out of town, but I do not think the evidence all taken together bearing upon this point sufficiently proves the fact.

Although the plaintiff was a surety in said note, still I think that the mere fact, that he did not know at the time he confessed the judgment, that the debt was barred by the statute of limitations, is not in and of itself sufficent to entitle him to relief in a court of equity against said judgment, especially under the great negligence and *laches* of the plaintiff, which appear in the case, and to which I have alluded, fraud not appearing to have been practiced upon the plaintiff by the defendant, Price, in procuring the confession of the judgment. Although the defendant, Price, knew that said note had been due and payable more than five years, still I think from the evidence that he in fact believed at the time said judgment was confessed, that an action on the note was not barred because of the payment which had been made and endorsed on the back thereof within the five years. It seems the object of the defendant, Price, in desiring a judgment, if his debt was not then paid, was to secure it by judgment-lien upon the lands of said Harner, and the object of the plaintiff in confessing the judgment for what he knew to be a just debt was to give the defendant, Price, the benefit of such judgment-lien for the security of the debt. There was therefore no such mutual mistake or ignorance of facts in the parties as disappointed their intention by mutual error. Each party

(barring the negligence and *laches* aforesaid of the plaintiff) was equally innocent, and, as I have before stated, it does not sufficently appear from the evidence, that there was any fraudulent concealment from the plaintiff upon the part of defendant, Price, or in fact any fraud practiced by the said Price upon the plaintiff in procuring the confession of judgment; and in such case I apprehend under the authorities and the law there is no foundation for equitable interference, if the case stood simply upon contract in the absence of a confessed judgment.

But it is claimed, that the judgment is a *nullity* and not binding on the plaintiff, for the reason that the final judgment in the suit was *against* the defendant, Price, on a plea not personal to the co-security who filed it, or at least would have been so, if the plaintiff had not abandoned the case and suffered a nonsuit, and thereby released also the plaintiff. The case of *Steptoe* v. *Reed,* 19 Gratt. 1, is cited to show, as I suppose, that the confessed judgment is a nullity. The principal subject discussed in this case has been considered by this Court in the case of *Snyder* v. *Snyder,* 9 W. Va. 415, and I do not think that either the former or latter case sustains the position that the judgment is a nullity, and that it can be so considered by us in this case. The 43d section of chapter 125 of the Code of this State of 1868 provides, that "in any suit a defendant may confess a judgment or decree in the clerk's office, for so much principal and interest as the plaintiff may be willing to accept a judgment or decree for. The same shall be entered of record by the clerk in the order-book, and be as final and as valid as if entered in court on the day of such confession, except merely that the court shall have such control over it as is given by the last section of this chapter." And the last section (which is the 60th) of said chapter is as follows: "The court shall have control over all proceedings in the office, during the preceding vacation. It may reinstate any cause discontinued during such vacation, set aside

any of the said proceedings or correct any mistake therein, and make such order concerning the same as may be just."

The effect of said 43d section of chapter 125 of the Code upon the common law rule as to joint judgments considered in said case in 9 Gratt., does not appear to have been brought to the attention of the court by counsel or to have been considered by it, nor do I find that it has been considered and passed upon in any case. I do not consider it necessary to consider that question here, because in this case we are not sitting as a court of error to pass upon the regularity of the proceedings in the common law case. I think however it is clear that said judgment so confessed must be held valid, until it shall be set aside, arrested or reversed by proper proceedings at law in the case. The judgment of nonsuit as to the defendant, William Hagans, after the filing of the plea of the statute of limitations was suffered and entered a considerable time after the filing of the bill in this cause, and some time before the final decree therein, and the question as to whether the defendant, Price, in this cause, who was plaintiff in the action at law, released the said Harner from the judgment confessed by him, by suffering a nonsuit in the action at law as to the co-security, William Hagans, is not put in issue by the pleadings in this cause. If the plaintiff meant to rely upon that fact, he should regularly have done so by amended bill. But the theory of the plaintiff in this case is, that the action was barred as to said Hagans and himself each, and therefore the plea of the statute only being in and relied on as to said William Hagans, if the action was in fact barred as to said Hagans (which seems to have been the fact) a trial of the action upon that plea would have been a useless consumption of time and expenditure of costs.

I apprehend the true question is whether the judgment of nonsuit against said Price in the case should not have been joint in favor of Harner and Hagans instead

of in favor of Hagans alone, and the confessed judgment corrected, set aside or reversed as to Harner. This question is one properly for a court of law in proceedings in the case at law to determine   An injunction to a judgment is not a writ of error at law to such judgment nor in the nature of such writ, as a general rule, and as before stated the equitable proceeding by injunction does not lie to correct the irregularities and errors of courts of law, when such exist. For such errors and irregularities there is ample remedy in a court of law, and the remedy is not in a court of equity.   I do not mean however to express any opinion as to whether there is error in the law case, for which it could have been reversed or corrected, as that question cannot be considered in this case.

For the foregoing reasons it seems to me, that there is no error in the decree of the circuit court of the county of Monongalia rendered in this cause on the 22d day of September, 1876, and the same must therefore be affirmed with costs and $30.00 damages in favor of the appellee, William Price against the appellant, Philip W. Harner.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.