# WHEELING.

## PYLES *v.* FURNITURE CO.

Submitted June 2, 1887.—Decided June 29, 1887.

1. MULTIFARIOUSNESS.

    A bill will not be held multifarious by reason of an improper charge, which charge does not set up an independent cause of action. (p. 132.)

2. PLEADING.

    A general charge of fraud in a bill will not be sufficient to put the defendant to his answer. The facts, which, it is alleged, constitute the fraud, must be set out; and they must, if true, make out the charge. (p. 133.)

3. CORPORATION.

    An insolvent corporation having ceased to do business has the same power, as an insolvent individual, to prefer a creditor in a general assignment of all its property for the payment of its debts. (p. 134.)

4. CORPORATION.

    Where there was a decision in Virginia seventeen years before the formation of this State holding, that an insolvent corporation having ceased to do business could prefer creditors, and at the time of such decision a statute was in existence in Virginia, not applicable to the case decided, which denied to a mining or manufacturing corporation the right to make any incumbrance preferring a creditor, and such statute continued until 1863, after the formation of this State, when it was repealed by implication, and there has been no statute in force in this State for twenty four years denying such right to a corporation, the law, as then settled in Virginia, is the law of this State, and it can not be changed except by the Legislature. The decision then rendered has become a rule governing property; and it is not in the power of the courts to change it. (p. 142.)

5. CORPORATION.

    There is nothing in the policy of our statutes, which forbids an insolvent corporation to prefer creditors. (p. 142.)

6. CORPORATION.

    Where the whole scheme of a bill is to set aside trust-deeds executed by a corporation on grounds not recognized in law, and to distribute the proceeds of the property among the creditors *pro rata*, and there is also a charge in the bill, that the trustees have unreasonably delayed the execution of the trust, and that the property is wasting, and no charge, that the plaintiff ever demanded a sale of the property, and the bill alleges, that the property will not pay the several creditors under the trust, this charge

under the circumstances is not sufficient to justify the taking of the property out of the hands of the trustees and the putting of it into the hands of a receiver. (p. 145.)

*Ewing Melvin & Riley* for appellant.

*W. P. Hubbard* and *A. J. Clarke* for appellees.

Johnson, President :

On the 27th day of February, 1885, the plaintiff instituted his suit in chancery in the Circuit Court of Ohio county against the defendants to set aside several deeds of trust, which had been executed by the Riverside Furniture Company, one of the defendants, to secure certain of its creditors, the last of which was a general assignment of all its property for the benefit of all its creditors, but preferring certain creditors. The further object of the bill was to have a receiver appointed and the property of the corporation sold and the proceeds distributed among its creditors ratably.

The bill was filed at March rules and is as follows:

" In the Circuit Court of Ohio County.

"Jacob B. Pyles *vs.* Riverside Furniture Company, S. C. Eschstruth, August Gelhring, George Brackman, Henry Wohlert, George Shallhase, Henry Faupel, Albert Metzner, Henry Kilmer, A. C. Sauer, J. P. Heinlein, John Freiber, C. Weileman, William Detering, Louis Wheeler, Philip Veith, Adam Stahl, The Commercial Bank of Wheeling, Heinrich Schrader, Louise Gegner, Catherine Zimmer, Catherine Wheeler, August Rockebrand, Henry Bade, J. F. Merschrod, Joseph Wilson, The German Bank of Wheeling, G. Thoenen, The Exchange Bank of Wheeling, George Brakman, The Bank of Wheeling, C. P. Brown, administrator of the estate of Phillip Metzner, deceased, James Wheeler, trustee, and S. P. Hildreth, trustee.—Bill in chancery.

"To the Hon. the Judges of the Circuit Court of Ohio County :

"Humbly complaining, Jacob B. Pyles brings this suit in his own behalf and in behalf of all others the creditors of the "Riverside Furniture Company" who may contribute to the costs of and aid in prosecuting the same against the de-

fendants above set out and named, and complains and says and charges in this his bill of complaint, that the "Riverside Furniture Company" is a corporation, created and existing under the laws of the State of West Virginia, having its principal place of business at the city of Wheeling, in Ohio county, in said State; that its certificate of incorporation is dated on the 12th day of December, 1881, and is printed pursuant to law in the Acts of the Legislature of 1881, on pages two hundred and sixty four and two hundred and sixty five; that the said corporation was formed for the purpose of manufacturing and dealing in furniture of all kinds and such articles as enter into its manufacture, and of dealing in such patents as were then, or might be thereafter, issued for any machinery for making such furniture; for the purpose of purchasing and selling (after such purchase) such timber as may be necessary for the purpose of carrying on the proposed business; that the said corporation organized and carried on business until about the beginning of the year 1884, since which time complainant is informed and believes and charges the fact to be that the said corporation has done no business or transacted any affairs contemplated by the objects set forth in their certificate of incorporation; that the last board of directors for said corporation elected by the stockholders were Philip Metzner (now deceased), S. C. Eschstruth, August Gehring, George Brackman and Henry Wohlert, the four last named being still directors; that in January, 1882, Philip Metzner, as president, and William Detering, as secretary, and S. P. Hildreth, as trustee, executed a deed purporting to have been authorized by the board of directors of said corporation, conveying to said Hildreth lots numbered 18, 19, 20 and 21, situated on the east side of Water street in the Fifth Ward of the city of Wheeling in the addition to said city laid off by John Eoff and William Chapline. Said deed purports on its face to be in trust to secure the holder or holders thereof the payment of sixty bonds of the amount and denomination of five hundred dollars each, issued by the said corporation, all bearing date the first day of February, 1882, and payable to S. P. Hildreth, trustee, or bearer, on the first day of February, 1897, with interest at the rate of six per cent. per annum until

maturity, payable semi-annually; an authenticated copy of said deed of trust is marked "A" herewith filed and prayed to be taken as a part of this bill and to be read therewith. Your orator here charges, that this is fraudulent and void as to his judgment and lien hereinafter stated and as to other creditors of said company; that said deed was not made for any corporate purpose specified in the certificate creating said corporation; that the bonds thereby secured to be paid were not lawful debts incurred by the corporation or authorized by law or the certificate of incorporation of said company; that they were not issued for any lawful purpose authorized by law; that the powers of said corporation were and are limited by the second section of chapter fifty two of the Code of West Virginia to the purposes for which it was incorporated, and it had no right to engage in borrowing money and giving its bonds in the manner set out in said deed; that the issuing of the said bonds was a manifest evasion of the statute requiring the stock of the company to be sold at not less than par; that no adequate consideration was ever received by the company for these bonds; that its means have been misapplied in the payment of interest on and in negotiating them; that said corporation again, on the 11th day of August, 1882, made another deed of trust to S. P. Hildreth, trustee, to secure the payment of a note therein described as being a note for money loaned; this trust covered certain lumber therein described; an authentic copy of this last deed is marked "B" herewith filed and prayed to be taken as part of this bill of complaint. Your orator avers, that this last named deed is unauthorized and fraudulent and void as to the claim of your orator hereinafter named.

"Your orator further shows, that the Commercial Bank of the city of Wheeling is a corporation existing under the laws of this State, and has been in existence and carried on business ever since the incorporation of the Riverside Furniture Company; that during all this time the said S. P. Hildreth has been its agent and cashier, and has at all times known of the debts claimed and deeds of trust hereinbefore referred to, and he and his bank knew well, that the indebtedness of the Riverside Furniture Company could not be

paid out of the property included in these deeds of trust, and that they carried all the assets of value belonging to the company; that your orator was, for at least ten years past, a customer of this bank, doing business in it and implicitly relying on the statements of its cashier, the said Hildreth; that your orator was and is a country merchant and dealer in lumber; that on or near the — day of ——, 1883, the Riverside Furniture Company applied to your orator and desired to buy lumber on credit; that thereupon your orator applied at said Commercial Bank for information concerning the financial standing, ability and credit of the said Riverside Furniture Company, and was informed by said S. P. Hildreth, its agent and cashier, that the said Riverside Furniture Company was in good credit, solvent and secure. Relying on this statement, several times afterwards repeated, your orator was induced thereby to sell on credit to said Riverside Furniture Company a large amount of lumber, amounting in value to the sum of your orator's judgments hereinafter set up, which judgments were obtained for the lumber so sold to said Riverside Furniture Company; that while the said S. P. Hildreth was fully informed of the true financial condition of said Riverside Furniture Company, your orator was wholly ignorant in regard thereto and relied entirely on the information and representations of said Hildreth as aforesaid. Your orator here shows, that when payment should have been made of the first money falling due on said sales, said Hildreth's repeated assurances of the solvency of said Riverside Furniture Company, and at all times concealed from your orator any knowledge of the deeds of trust hereinbefore recited and of the large indebtedness claimed by his bank, and thus prevented your orator from proceeding to sue for and collect his money when it became due. Upon being advised from other sources, that the said company was heavily indebted and insolvent and had been in such condition for some time, your orator brought suit from time to time and obtained the judgments hereinafter recited.

"Your orator further shows that shortly after he had brought the first of his suits, the one prosecuted in the Municipal Court of Wheeling against the Riverside Furniture Com-

pany, the said S. P. Hildreth, in the interest of and for his said Commercial Bank, and in his own interest, intending and purposing to hinder, 'delay, cheat and defraud your orator out of his claim and to make it impossible for him to collect any money after obtaining a judgment, and for such purpose colluding with the said Riverside Furniture Co., obtained another deed of trust on all the real and personal property belonging to said Riverside Furniture Company, in cluding all or nearly all the large quantity of lumber sold and delivered to said company by your orator, and for which his judgment was obtained.

"Your orator avers that the representations made by said Hildreth concerning said Furniture Company were false and fraudulent, and that he knew at the time of making them they were so false and fraudulent, and that they were made to deceive and did deceive your orator; and but for said representations your orator would not have credited the said Company.

"Your orator further shows that the deed of trust last referred to is dated on the 31st day of January, 1884; that said Hildreth and one James Wheeler are trustees therein; that the said Commercial Bank is a preferred creditor therein to at least the amount of thirty-five thousand dollars, and that other persons are secured therein and made preferred creditors in a very large amount, as will be seen by reference to an authentic copy of said deed marked "C" herewith filed and prayed to be taken as a part hereof.

"Your orator shows that this last named deed of trust is fraudulent and void as to your orator's judgments hereinafter set out; that the act of making said deed is not within the corporate purposes for which said company was formed; that the said company were insolvent at the time, and in making said deed fraudulently, in violation of its trust to hold the property of the said company for the benefit of all its creditors, have perpetrated a fraud upon your orator by making it impossible for him to collect any part of his said judgment unless the same shall be declared void, and by obtaining lumber from him on credit which is thus conveyed to another with the purpose of defrauding your orator.

"Your orator further shows and charges that said company

being insolvent at the time were legally bound to wind up the affairs of said company and pay its creditors *pro rata ;* that they had no right to make preferred creditors as in the said deed of trust they have done; that their action in that respect was a fraud on the rights of your orator and all other creditors in like situation in respect thereto.

"Your orator further shows that the said trustees have since the date of the last named deed of trust taken possession of and held the property therein described, and have not as yet closed the affairs confided to them by disposing of the property for the creditors of the company, but unreasonably delay the same, and the property is wasting and lessening in value and will continue to do so; that said Riverside Furniture Company have not since the date of said last named deed of trust exercised or attempted to exercise any authority or power granted them in their certificate of incorporation, nor have they carried on or attempted to carry on any of the business specified in said certificate; in point of fact they have deprived themselves of the power to carry on business by assigning and turning over to the said trustees all their property and machinery, and are hopelessly insolvent and unable to resume business, while the property is wasting and becoming of less value day by day; that the said company is indifferent to its affairs, and have made no effort to settle and wind up its affairs as it was their duty to have done, nor have the said trustees done so; that the foregoing facts are and constitute sufficient cause to entitle your orator, a creditor of said Riverside Furniture Company, to file this bill to have receivers appointed to settle and wind up its affairs under the orders of this honorable court, and to have each of the foregoing named deeds of trust set aside and the property of the company subjected to the payment of its debts without regard to the preferences named in said deeds.

"Your orator further shows that he has seven judgments against the said Riverside Furniture Company, one obtained in the Municipal Court of Wheeling on the 17th day of March, 1884, amounting, together with the cost, to $1,425.63, inclusive of interest, which will more fully appear by reference to abstract copied from the judgement lien docket in the clerk's office of the County Court of Ohio county; and au-

thenticated copy of said abstract is marked No. 1 herewith filed and prayed to be taken and deemed part thereof. On this judgment execution has issued, and your orator has a lien on all the property of the company.

"Your orator has six other judgments obtained at various times before D. Z. Phillips, a justice of the peace of Ohio county; authenticated copies of abstracts from judgment lien docket of these judgments are marked 2, 3, 4, 5, 6, 7 and are here filed and prayed to be taken as part of this bill. Said last named judgments, including costs and excluding interest, amount to the further sum of seventeen hundred and forty dollars and twenty cents due your orator, the credit being obtained as hereinbefore stated, all of which judgments are liens on the property of said Riverside Furniture Company.

"Your orator has no means of ascertaining, and does not know, what dividends have been paid by said company, and has no means of knowing what is the consideration for the apparent large indebtedness of the company, nor how much thereof has been paid, or the manner of payment, and call upon the said Riverside Furniture Company to state its several debts with precision as to amount, date, and what the debt was incurred for; how many of the company's bonds secured by deed of trust are outstanding, and what were these bonds given for; if sold what was received for them and the actual value so received; show who held these bonds at the date of their assignment to Hildreth and Wheeler, trustees; what dividends and salaries have been paid, and the amounts thereof; how much capital stock was subscribed, and what part paid in, and how paid.

"Your orator further shows that Philip Metzner has departed this life; that C. P. Brown is administrator of his estate; that the defendants named are interested herein as follows: S. C. Eschstruth, August Gering, George Brackman, Henry Wohlert are stockholders and directors in said Riverside Furniture Company; that C. P. Brown, administrator of Philip Metzner, deceased, George Schellhase, Henry Faupel, Albert Metzner, Henry Kilmer, A. C. Sauer, J. P. Heinlien, John Freiber, C. Wileman, Wm. Deitering, Louis Wheeler,

Philip Veith and Adam Stahl are stockholders; that the other creditors named are creditors and trustees.

"Your orator complains and says that the acts of the said Hildreth and the Commercial Bank and of the Riverside Furniture Company hereinbefore recited are contrary to equity and good conscience and if declared valid they would defeat your orator's entire claim as intended by them.

"In tender consideration thereof, your orator prays that this honorable Court may appoint a suitable receiver to take charge of the property of said Riverside Furniture Company, especially the property named in the deeds of trust; that he may be required to administer the assets of said company; that the creditors of said company be paid *pro rata*, no regard being had to the preferences named in said deeds of trust; that said deeds of trust be declared void as to said preferences; that this cause be referred to a commissioner of this Court to take and state an account with the trustees, Hildreth and Wheeler, which shall show the amount of property and other things which came to their hands and how distributed; that if anything has been paid any creditor by them he shall state the name of such creditor and the amount and date of payment; that such decree may be made thereon as may be proper; that he shall hear proof of claims and debts against said company, ascertain the amount thereof, to whom due, and their priorities, if any; that said corporation be dissolved and your orator and other creditors be paid what is due; and your orator prays for such other and general relief in the premises as the nature and circumstance of this case may require and as to the Court may seem fit. And your orator will ever pray, &c."

The three trust-deeds are exhibited with bill. The first was executed January 31, 1882, to S. P. Hildreth, trustee, to secure sixty bonds of $500.00 each issued by said company and numbered one to sixty inclusive, and payable to S. P. Hildreth, trustee, or bearer on the 1st day of February, 1899, with interest at the rate of six *per cent.* until maturity payable semi-annually &c. This deed was recorded March 5, 1883. The second deed, Exhibit B, was executed August 11, 1882, and conveyed certain lumber, estimated at 600,000 feet, to S. P. Hildreth, trustee, to secure the payment of a note of

$10,000.00 to the Commercial Bank. This deed was recorded August 12, 1882. The third deed conveyed to Hildreth and Wheeler, trustees, all the property both real and personal of the Furniture Company to secure, 1st, all the liens on the property; 2nd, $35,603.06 to the Commercial Bank; 3rd, the claims of a large number of other creditors specifying the amount of each ; 4th, all the other debts of the corporation. This deed was executed on the 31st day of January, 1884, and was recorded on the same day. The first judgment for $1,425.63 was rendered by the Municipal Court of Wheeling in favor of plaintiff on the 17th day of March, 1884 ; — the next for $300.80 was rendered by a justice on the 7th day of May, 1884; another for $297.30 on the 12th day February, 1884; another on the same day for $281.90; and another for $281.60 on the 12th day of March, 1884.

The Commercial Bank and S. P. Hildreth and James Wheeler, trustees, defendants, demurred to the bill on two grounds: 1st. The bill is multifarious in this, that it unites a claim against the Commercial Bank and S. P. Hildreth improperly with a claim against the Furniture Company ; that the plaintiff has an adequate remedy at law for the claim against the bank and Hildreth for false representations; 2nd, the Riverside Furniture Company though insolvent had a legal right to make an assignment with pref· erences; and there is nothing in the statutes of this State prohibiting an insolvent corporation, organized under the laws of this State, from making an assignment for the benefit of its creditors giving preference to particular creditors. On the 5th day of June, 1886, the following was entered :

"The demurrer heretofore interposed to complainant's bill having been duly considered, it is adjudged, ordered and decreed, that such demurrer be sustained; and the complainant not desiring to amend his bill, it is further adjudged, ordered and decreed, that the same be dismissed, and that the Commercial Bank, S. P. Hildreth and James Wheeler, the demurring defendants, recover of the complainant their costs herein expended."

From this decree the plaintiff appealed.

Was the demurrer properly sustained? The first ground of demurrer is, that the bill is multifarious, because it unites

a claim against Hildreth and the Commercial Bank with an independent claim against the Riverside Furniture Company. It seems to me, that the bill, as will clearly appear on inspection, does not unite two independent claims. No demand for damages is made against Hildreth or the bank. It seems, rather, that the charge against Hildreth and the bank is introduced into the bill to show, that the last deed was fraudulently executed. To my mind it is entirely insufficient for any such purpose for several reasons. The deeds complained of were on record, before the lumber was sold, as far as can be ascertained from the bill. Then, if Hildreth did make the representations alleged, the bank was not bound by them, as it was not within the scope of his authority to make them. *Foster* v. *Essex Bank*, 17 Mass. 479; *Merchants' Bank* v. *Marine Bank*, 3 Gill. 96 (43 Am. Dec. 300); *Wickler* v. *Bank*, 42 Md. 581 (20 Am. Rep. 95).

The other ground of demurrer is, that the Riverside Furniture Company though solvent had a legal right to make an assignment with preferences. This is the main question to be decided in this cause. There is no sufficient charge of fraud as to the execution of the first two deeds. It is not charged, that the corporation was insolvent, when they or either of them was executed. The general charge of fraud without showing facts, which constitute the fraud, is insufficient. It is claimed in the bill, that the corporation had no power to borrow money, as the first deed shows it did. The corporation was created for the purpose of manufacuring furniture &c. If it manufactured large quantities of furniture, as it lawfully might, it might have been for the interest of the corporation to borrow large sums of money; and if it did so, I can see no good reason, why it should not be permitted to secure its creditors. If it could not secure them, then of course it could not borrow money; and if it did not borrow, it might not prosper in its business. Section 49 of chapter 53 of the Code provides among other things : " For every corporation subject to this chapter there shall be a board of directors, who shall have power to do or cause to be done all things, that are proper to be done by the corporation." Such a corporation has the power to borrow

money as incident to its power to purchase stock and materials. *Fay v. Noble*, 12 Cush. 2. There is no reason shown on the face of the bill, why either of the first two deeds should be set aside.

But it is charged by the bill, that, when the third deed was executed, the company was hopelessly insolvent and stripped itself of all its property and ceased to do business and has transacted no business since that time. The question is thus directly presented, can an insolvent corporation, which has ceased to exercise its corporate franchises, make an assignment by which it prefers creditors? In the absence of statutory prohibition has an insolvent corporation, which has ceased to do business, the same power of making preferences among its creditors in the distribution of its assets, that an insolvent individual has, or are the assets of such corporation a trust-fund to be distributed among its creditors ratably?

In the case of *Lamb*, trustee, v. *Laughlin*, 25 W. Va. 300, after a review of the authorities *pro* and *con*. I said: "It seems to me, that the doctrine, that directors of a corporation do not sustain a fiduciary relation to the creditors, is based on no better reason, than that a natural person or the members of a partnership do not sustain a confidential relation to their creditors. Is this reason a sound one? Is there no difference between the natural person and the artificial person called a corporation? A person goes into mercantile business. He is worth, it may be, $100,000.00. His creditors trust him more on the faith of his property than his business management. They know that his liability is unlimited; that all he has is held for his debts. Not so with a corporation. In this State as well as others no stockholder, after he has paid his stock-subscription, is liable personally for any part of the debts of the corporation. * * * * * * When the directors of a banking-corporation ascertain, that it is hopelessly insolvent, so that individually they are unwilling longer to aid it, their manifest duty is to close the doors at once; for continuing to do business then (as receiving deposits) is a fraud upon the public, and they should not receive any more deposits nor pay any more checks, but should proceed to execute their trusts either by making a

general assignment for the benefit of the creditors or by paying *pro rata* the debts of the corporation. Whether the board of directors could then under peculiar circumstances make preference of creditors, as was done in *Burr* v. *McDonald*, 3 Gratt., it is unnecessary to decide in this case." The question was not decided in that case, as it was not regarded as necessary to the decision of the cause.

In *Lamb* v. *Panneil*, 28 W. Va. 666, Snyder, Judge, said: — "Both in reason and in law there is a wide difference between an insolvent corporation not using its franchises and a solvent one in the full exercise of all its powers and franchises. Neither the corporation itself nor its stockholders have any *beneficial* interest whatever in its property or assets, after it has become wholly insolvent and unable to exercise its franchises or carry on its business. By the insolvency of the corporation it is rendered incapable of pursuing the objects, for which it was created. Its officers or agents properly cease to use its franchises, after the insolvency has been ascertained; but their responsibility as to its assets does not cease. They continue to hold them as before, not for themselves or for the use and benefit of the stockholders, but necessarily for its creditors. While it was solvent and in the full enjoyment of its franchises, the entire beneficial interest in its property belonged to the stockholders. But after the insolvency, while the *legal* ownership of the assets may continue as before, the *beneficial* interest of the stockholders clearly no longer exists. A state of insolvency pre-supposes, that the capital-stock and assets are insufficient to meet its liabilities to its creditors. The stockholders having incurred no personal liability for the debts have in point of fact no interest in the disposition of the corporate assets after the insolvency. In equity therefore as well as in law the beneficial interest in the assets must of necessity belong exclusively to the creditors. For the corporation, its officers and stockholders being simply the holders of the legal title and nothing more, the beneficial interest must belong to some other than they, and as there is no such other except the creditors, they must be the sole beneficial or equitable owners. The capital is the fund the creditors trusted, and to which with the other acquired property or

assets they can alone look for indemnity. Both stand pledged for the indemnity of the corporate debts; and a court of equity will follow them into the hands of the stock-holders or other persons receiving them with notice, for the benefit of the creditors. From this view it seems to be a nec-essary consequence, that after the admitted insolvency of the corporation and the non-use of its franchises the officers and stockholders of the corporation, in whose hands the assets re-main, hold them as *quasi* trustees for the creditors, who as the beneficial or equitable owners of such assets occupy as to them the position of *cestuis que trust*. *Man* v. *The Union Bank*, 1 Cold. 474; Hill on Trustees 316; *Robins* v. *Embry*, 1 Sm. & M. Ch'y 207; *Richards* v. *Insurance Co.*, 43 N. H. 263; *Bradley* v. *Farwell*, 1 Holmes 433; *Sawger* v. *Hoag*, 71 Wall. 610; *Barings* v. *Dabney*, 19 Wall. 1; *Jackson* v. *Ludling*, 21 Wall. 616; Morawetz Corp. § 580.

"The creditors thus occupying the relation of *cestuis que trust* have an equitable lien upon the assets of the insolvent corporation, which may be enforced by them in a court of equity. An assignment by the corporation of its property and assets to a trustee does not release this lien. On the contrary the trustee in such case represents both the legal and beneficial ownership of the assets and also the rights and remedies of the creditors thereto."

On this subject there was much more said by Judge Snyder in the case referred to than I have quoted; and in *Lamb* v. *Laughlin*, 25 W. Va., I said much more on the subject than I have quoted. In that case I analyzed many authorities and convinced myself, that the great weight of authority and all the reason and logic compelled us to hold, that un-der no circumstances, unless expressly authorized by statute or by its charter, could an insolvent corporation having ceased to exercise its franchises make an assignment pre-ferring creditors. If this Court were free to do so, answer-ing the first three queries propounded in *Lamb* v. *Laughlin*, 25 W. Va., we would hold, that all the assets of an insolvent corporation not using its franchises constitute a trust-fund for the benefit of its creditors; that the directors of such in-solvent corporation are *quasi* trustees for its creditors; and that such directors can not make an assignment prefer-

ring creditors. We have not decided the question either in *Lamb* v. *Laughlin*, 25 W. Va., or in *Lamb* v. *Pannell*, 28 W. Va. Are we free to decide, that an insolvent corporation can not prefer its creditors?

On the 13th of February, 1837, the General Assembly of Virginia passed an act prescribing general regulations for the incorporation of manufacturing and mining companies. By the 17th section of that act it was provided: "No company claiming the benefit of this act shall by deed of trust, mortgage or otherwise incumber their property for the purpose of giving the preference to one creditor over another. And whenever any such deed or mortgage shall be given to any one or more creditors, it shall enure to the benefit of all the creditors of such company existing at the time of such conveyance, and all such creditors shall be entitled to ratable satisfaction out of the property embraced by such conveyance."

By an act passed the 3d day of January, 1833, the General Assembly incorporated The Catawba Iron Works Company for the manufacture of iron &c. in the county of Botetourt. The company was organized on the 11th day of July, 1834, when John M. Harvey was elected president. When the company was organized, its whole capital was invested in land, on which was its furnace and ore-banks. The company being without the means necessary to carry on its operations, three of its stock-holders, John M. Harvey, John R. Triplett and David I. Burr agreed to endorse three notes by the company for $5,000.00 each. These notes were made by the company and endorsed by these three persons, or by the partnership, of which they were respectively members. One of the notes was discounted at the Bank of Virginia, one at the Farmers' Bank and the third at the Branch Bank of Virginia at Buchanan. Those notes were regularly renewed until the death of David I. Burr. After his death the name of his executor was substituted for his at the bank in Buchanan, and his surviving partners, who carried on the business under the name of David I. Burr & Co., continued their endorsements on the two other notes. Their liability however was merely nominal, as David I. Burr, considering the endorsement as properly his own,

directed by his will, that his partners should be indemnified out of his estate for any money, they might be required to pay on.'account thereof.

On the 4th day of January, 1837, the directors thinking they were in a prosperous condition, and that their stock had advanced fifty *per cent.* declared a stock dividend of fifty *per cent.*; and certificates were accordingly issued. This was the only dividend made by the company. On the 6th of August, 1840, there was a general meeting of the stockholders, at which they were informed, that the company was heavily indebted; and they determined to make provisions for the payment of the debt. At that time there were on hand nearly 700 tons of iron. This the stockholders supposed to be in the hands of the president as the agent of the company. They were informed however by the president, John M. Harvey, that the iron was not in his hands as president; but that it was in the hands of John M. Harvey & Co. and would be held by them to indemnify them for advancements and liabilities for the company. Under this state of things the meeting not being prepared to act adjourned to meet on the 10th day of the same month. On that day the stockholders again met, and Harvey still insisted on the right of John M. Harvey & Co. to retain the iron on hand for their indemnity, a resolution was passed directing a deed to be prepared conveying the whole of the property of the company to certain trustees, who should sell the same and apply the proceeds to the payment of the debts of the company in the order specified in the resolution. The meeting then adjourned to the 13th of the month, when, it appearing, that there had been no election of officers of the company since the 17th of February, 1837, it was resolved that the stockholders would proceed to elect a president and four directors. Thereupon Thomas Samson, one of the partners of both the old and new firm of David I. Burr & Co., was chosen president. At the same meeting the deed was presented, and said deed having been examined and approved by the meeting, it was resolved: "That Thomas Samson, the president of the company, be directed to execute the same for the Catawba Iron Works Company in such manner, as that it may be admitted to record in the clerk's office of the County

Court of Botetourt, and forward the same to that office."
The deed was accordingly executed by affixing the seal of
the company &c.

· The deed recites the endorsements upon the three notes
of $5,000.00 each, and that John M. Harvey or John M.
Harvey and Co. hold in his or their possession a large
quantity of iron, which they claimed to apply to the dis-
charge of their advancements to and liabilities for the
Catawba Iron Works Company, and that therefore it
was proper, that they should be postponed to the other
sureties and creditors of the company. It then conveys to
trustees all the property, real and personal, of the company,
including the iron then in possession of John M. Harvey
& Co. or elsewhere upon trust to take possession of said
property and to sue for the same, if suit be necessary either
in their own names or in the name of the company, providing
however, that the company may direct the abandonment of
any claim to any parcel of said property &c. The deed directs
the trustee to sell the property and collect the proceeds of
such sale, " and out of these proceeds first to pay the ex-
penses of executing the trust; second to pay off any judg-
ments against the company, which may have been recov-
ered before the execution of the deed; and in the third
place to pay the endorsers on the aforesaid three notes other
than John M. Harvey or John M. Harvey & Co. any moneys
that they had paid or might be required to pay on account
of said endorsements, and to all other sureties of the com-
pany other than John M. Harvey or John M. Harvey & Co.
all money which they had paid or might pay on account of
their suretyship." The general creditors of the company
other than John M. Harvey or John M. Harvey & Co. were
then provided for, and lastly Harvey & Harvey & Co.

In 1841 William McDonald and others, creditors of the
company, who had obtained judgments, filed their bill to
set aside said deed, and after setting up many objections to
the deed among others, that the corporation had no power
to execute such a deed, pray, that said deed may be set aside
as null and void as to the creditors, that the property or so
much thereof, as may be necessary, may be sold for the sat-
isfaction of their judgments, and in the mean time that the

trustees be enjoined from selling the property. The corporation answered the bill. Burr, executor, also answered and the former and then present members of the firm of David I. Burr & Co. and J. M. Harvey.

This cause, in which an insolvent corporation in the very deed, which stripped it of all its corporate property, preferred creditors and for a purpose quite apparent postponed one of its creditors, until all the others had been satisfied, is almost precisely like the one before us.

The cause was heard on the 8th day of December, 1843. There was no demurrer to the bill. The court held the deed void on this ground among others, that the execution of the deed was not such an act as the president of the corporation might perform, because it was not necessary to the existence of the corporation. The court appointed commissioners to sell the property and ordered them to report their proceedings to the court. From the decree an appeal was taken by Burr's executor and another. The proposition, that an insolvent corporation can not in an assignment prefer creditors, does not seem to have been much considered in the elaborate arguments in the briefs of counsel. On this point Allen, Judge, delivering the opinion of the court said: "The court is further of the opinion, that there is no repugnancy in the terms of the deed and nothing illegal in the preferences thereby given, if in other respects the deed be free from objection, as the act of February 13th, 1837, Session Acts chap. 84, sec. 17, p. 79, prohibiting such preferences does not apply to this corporation." *Burr* v. *McDonald*, 3 Gratt. 236, decided in 1846. Judge Allen did not cite any authority for this decision; but that is not strange, when we consider the fact, that at that time all or nearly all the decisions fully sustained the right of an insolvent corporation to prefer creditors. Burrill on Assignments 602 *et. seq.* citing *DeRuyter* v. *Trustees*, 3 Barb. Ch'y 119, which was affirmed on appeal, 3 Coms. 238; *Catlin* v. *Eagle Bank*, 6 Conn. 233; 2 Kent Comm. 364 n.; *Haxton* v. *Bishop*, 3 Wend. 13; *Pope* v. *Brandon*, 2 Stew. 401; *State* v. *Bank*, 6 Gill. & J. 205; *Warner* v. *Mercer*, 11 Vt. 385; *Flint* v. *Clinton Co.*, 12 N. H. 431; *Dana* v. *Bank*, 5 Watts & S. 223; *Bank* v. *Huth*, 4 B. Mon. 423: *United States* v. *Bank*, 8 Rob. (La.) 202

Conway *ex parte,* 4. Ark. 304; *Hopkins* v. *Turnpike Co.,* 4 Humph. 403.

In *Planter's Bank* v. *Whittle,* 78 Va. 737, it was held that the directors of an insolvent bank might *make preferences* among its creditors and even in its own favor; that the act of February 13, 1837, did not apply to any corporation except corporations for mining and manufacturing purposes. So, it seems, in Virginia the law has always been, that any corporation except a mining or manufacturing corporation might, after it had become insolvent, prefer creditors, and that a mining or manufacturing corporation solvent or insolvent could make no lien on its property to prefer a creditor. The act of 1837, sec. 17, denying to such corporation the right to prefer a creditor was at the revisal of the Code in 1849 retained as section 34 of chapter 57 of the Code of 1849, p. 305, and was again retained in the Code of 1860, as section 34 chapter 57 of that Code, p. 336. It was also a part of our Code until 1863 when it was omitted. It was not only omitted from chapter 83 of the Acts of 1863, which re-enacts the whole law governing corporations and contains sixty six sections, but section 18 of said chapter by implication repeals section 34 of chapter 57 of the Code of 1860. Section 18 is as follows:

"Every corporation, for which a certificate of incorporation shall be issued in conformity with the ninth and twelfth sections of this act, shall until the expiration or dissolution thereof have perpetual succession and a common seal, which it may alter and renew at pleasure. It may sue and be sued, plead and be impleaded, answer and be answered at law or in equity. It may in any case and in any manner, in which it would be lawful for a natural person so to do, but subject to the restrictions and regulations herein contained, contract and be contracted with, purchase, acquire, hold and use real and personal estate, stock and securities or any interest or right therein, and grant, convey, sell, assign, lease, mortgage convey in trust, pledge, encumber or otherwise dispose of the same. It may in general meeting of its stockholders make by-laws and regulations not inconsistent with the laws of this State for the government of its board of directors, officers and agents, the management of its property and business

and the due and orderly conducting of its affairs; and gener‑ ally it may do for the purposes, for which it is incorporated, and in the transaction of its proper business, but subject to the restrictions and regulations herein contained, whatever it would be lawful for a natural person to do."

Of course it is lawful for a natural person though insolvent to prefer creditors. The above section therefore repeals the statute denying the right to mining or manufacturing corpor‑ ations. The law, as it now stands in the Code and which was in force when the deeds in question were executed, did not deny to any insolvent corporation the right to prefer credi‑ tors. When *Burr* v. *McDonald* was decided, it was held, that section 17 of chapter 84 of the Acts of 1837 was all that stood in the way of any corporation preferring its creditors. That statute has not existed in this State for more than a quarter of a century. The Legislature in 1863 of course had the Virginia decree in mind, when it took away this only restriction and evinced the policy, that in this State the common-law should govern, as was decided in Virginia seventeen years before, that an insolvent corporation could make an assignment of all its property and in that assign‑ ment had the same right as a natural person to prefer credi‑ tors. Every one, who traded with or trusted a corporation, did so with full knowledge, that it had such right. For nearly twenty five years, in fact during almost the whole of our existence as a State, all our people have been acting under the law as laid down in *Burr* v. *McDonald*, and the principle there settled has been acted on as a rule of prop‑ erty, and we could not, if we would, change that law now. The Legislature alone can change it. This Court has not the power.

It has been argued, that the policy of our statutes is against such preference; and chapter 52 section 2 and chap‑ ter 53 sections 53, 57, 59 are cited. Section 2 of chapter 52 provides, that the power of a corporation "shall be limited by the purposes, for which it is incorporated, and no corpora‑ tion shall engage in transactions or business not proper for these purposes; nor shall corporate powers be exercised in violation of any law of the State." I see here nothing that has been violated in the execution of the three deeds. As

we have seen, the corporation had the right to borrow money for its purposes and of course to provide for the payment thereof.

Section 56 of chapter 53 provides for the dissolution of the corporation at a general meeting of its stockholders and, in case this is done, requires that "the stockholders shall cause ample funds and assets to be set aside either in the hands of trustees or otherwise to secure the payment of all debts and liabilities of the corporation; and any creditor, who supposes his claim not to be sufficiently secured thereby, whether such claim be then due or thereafter to become due, may on bill in chancery, if sufficient cause therefor be shown, obtain an injunction to prevent the distribution of the capital and a decree against any stockholder for the amount of the capital received by him; and, if necessary or proper in the case, the court may appoint a receiver to take charge of and administer the property and assets of the corporation."

Section 57 provides for proceedings in equity to dissolve a corporation as follows: "If not less than one third in interest of the stockholders of a corporation desire to wind up its affairs, they may apply by bill in chancery to the Circuit Court of the county, in which the principal office or place of business of such corporation is situated, or if there be no such office or place of business in this State, to the Circuit Court of the county, in which the other stockholders or any one or more of them reside or are found, or in which the property of such corporation or any part of it may be, setting forth in the bill the grounds of their application, and the court may thereupon proceed according to the principles and usage of equity to hear the matter, and if sufficient cause therefor be shown, to decree a dissolution of the corporation, and make such orders and decrees and award such injunctions in the cause, as justice and equity may require."

Section 7 provides:—"If a joint-stock-company, whether organized under special charter or general law, suspend its proper corporate business at any time for two years continuously, its corporate rights and privileges shall cease."

The 58th section provides:—"When a corporation expires or is dissolved or before its expiration or dissolution,

such court, as is mentioned in the preceding section, may on application of a creditor or stockholder, sufficient cause being shown therefor, appoint one or more persons to be receivers to take charge of and administer its assets, and, whether such receiver be appointed or not, may make such orders and decrees and award such injunctions, as justice and equity may require." The 59th section provides:— " When a corporation shall expire or be dissolved, its property and assets shall under the order and direction of the board of directors then in office or of the receiver or receivers appointed for the purpose by such Circuit Court, as is mentioned in the fifty seventh section, be subject to the payment of the liabilities of the corporation and the expenses of winding up its affairs, and the surplus, if any, then remaining to distribution among the stockholders according to their respective interests," &c.

There is nothing in any of these sections, which takes away from a corporation, before its charter has expired, or before it has been dissolved, or before it has been taken into a court of chancery for the purpose of having its affairs wound up, its common-law right to prefer one or more creditors to the others, just as a natural person can do under the same circumstances. Of course after a corporation has been dissolved, or after its charter has expired, it can do no act except such, as is permitted by statute for the mere purpose of closing its affairs. It is not an act of dissolution to convey all its property in trust to pay its debts. In this State a corporation can be dissolved only in the mode prescribed in the statute : by the stockholders in general meeting or by the decree of a court of competent jurisdiction. In *Iowa* v. *Bank*, 2 Doug. (Mich.) 530, it was held, that, where the directors of an insolvent bank with the assent of a majority of the stockholders, though without the knowledge of some of them, assigned all the corporate property to trustees for the payment of the debts of the bank, preferring particular creditors, the assignment was valid at common law and was not in contravention of the policy of the statutes of the State ; that such an assignment did not *per se* operate as a dissolution of the corporation or a surrender of its franchises ; and that the statute

of Michigan providing for proceedings in chancery against corporations and for the voluntary dissolution of corporations are not in the nature of statutes of bankruptcy applicable to corporations.

We see nothing in our statutes to change the rule of the general law as it is laid down in *Burr* v. *McDonald* permitting insolvent corporations as well as natural persons to prefer creditors.

Having decided all the deeds to be valid (and there is no specific charge of fraud affecting either of them) what was left to the court except to sustain the demurrer and, the plaintiff declining to amend, to dismiss the bill? If the allegations of the bill are true, there is nothing in this cause for the plaintiff; for, he says, there is not property enough to pay the preferred creditors. The whole scheme of the bill was to have the three deeds of trust declared void and then to have a *pro rata* distribution of the assets among the creditors generally; and the charges of fraud, as we have seen, being insufficient, there is nothing left but the inconsistent statement in the bill—"that the said trustees have since the date of the last named deed of trust taken possession of, held the property therein described and have not as yet closed the affairs confided to them by disposing of the property for the creditors of the company but unreasonably delay the same, and the property is wasting and lessening in value and will continue to do so." The very thing, the plaintiff did not want, was the sale of the property under the several deeds of trust. It is not charged, that he or any other creditor had demanded of the trustees, that they should sell, and that they refused. I do not think sufficient is shown on the face of the bill to justify the court in taking the property out of the hands of the trustees and placing it in the hands of a receiver. The main object of the bill was to have the deeds of trust declared void and a distribution made ratably among the creditors. We have shown, that this can not be done.

The decree of the court is affirmed.

AFFIRMED.