# CHARLESTON

## ZINN et. al. v. DAWSON et. al.

Submitted June 14, 1899—Decided Nov. 18, 1899.

1. JUDGMENT—*Injunction—Judgment Creditor.*

    The mere insolvency of a judgment creditor will not, of itself, justify an injunction against the enforcement of a judgment at law, in order to let in a set-off which might have been pleaded at law at the time such judgment was recovered.   (p. 49.)

2. SET-OFF—*Equitable Relief.*

    When a party has been summoned to answer an action at law for the recovery of money and allows judgment by default to go against him, although at the time of such recovery he had judgments against the plaintiff which he might have pleaded as a set-off, he cannot, on the ground that he mistook the time at which the case was to be tried, combined with the fact of the insolvency of the plaintiff, come into equity to obtain the benefit of such set-off.   (p. 49.)

3. SET-OFF—*Judgment—Pleading.*

    A party is not compelled to plead a set-off in such an action, and if judgment is obtained against him, and he holds judgments against the plaintiff, he may, on motion in a court of law after notice, have his judgment set off against the plaintiff's judgment. (p. 49.)

Appeal from circuit court, Preston County.

Bill by Harrison Zinn and others against M. W. Dawson and Lloyd C. Shaffer.   Decree for plaintiffs.   Defendants appeal.

*Reversed.*

P. J. CROGAN, for appellants.

JAMES A. BROWN and JOHN W. MASON, for appellees.

ENGLISH, JUDGE:

Harrison Zinn, Lorenzo M. Zinn, Milford C. Gibson, and T. F. Lanham filed their bill in the circuit court of Preston County against M. W. Dawson and Lloyd C. Shaffer, sheriff of said county, praying an injunction to restrain said Shaffer and Dawson from collecting certain executions set forth and described in their bill in favor of said Dawson.

It appears from the pleadings in this cause that the defendant Dawson, at the March term, 1897, of said court, obtained a judgment by default against the plaintiffs Harrison Zinn and Lorenzo M. Zinn for seventy-nine dollars and forty-five cents, and a judgment against the plaintiffs Harrison Zinn, M. C. Gibson, and T. F. Lanham for one hundred and one dollars and forty-one cents, and twenty-four dollars and sixty-five cents costs, and that executions were issued and levied on both of said judgments; that the plaintiffs obtained an injunction restraining Dawson from collecting his said judgments, or either of them, alleging that Dawson was insolvent, and claiming that the plaintiffs Zinn and Gibson were the owners, by assignment, of three judgments upon which executions had been issued, then in the hands of the officers, which judgments were against said Dawson; praying that their judgments might be set off against the judgments of Dawson, and alleging that they would have been filed and pleaded as an offset at the time said judgments were obtained by Dawson but for the fact that they mistook the time when the matters upon which said judgments are founded were to be passed upon and decided on the law side of the court. An injunction was granted as prayed for, and an amended bill filed, in which the plaintiffs, among other things, alleged that they had asked the sheriff to balance the said executions, which he declined to do. The defendant Dawson demurred to the plaintiffs' bills, and filed his answer thereto, denying every material allegation, and the plaintiffs filed a special replication. On September 11, 1897, said demurrer was overruled, and the motion to dissolve the injunction also overruled, the court holding that the plaintiffs were entitled to have their executions set off and balanced against the executions in favor of the defendants, and referred the case to a commissioner, who made report, which was excepted to by the defendants. In the final decree the court confirmed the commissioner's report, balanced and set off the plaintiff's executions against the defendants, and also deducted the costs of this chancery suit from the defendants' judgments, and found a balance of fourteen dollars and seven cents due Dawson, for which execution was directed to issue in his favor. From this decree said Dawson obtained this appeal.

Can we sustain the action of the court in overruling the defendants' demurrer to the plaintiffs' bill and amended bill? Looking at the case thereby presented, were the defendants entitled to the relief prayed for in a court of equity? One of the grounds relied on by the plaintiffs in support of their prayer for an injunction and general relief is that the defendant Dawson is notoriously insolvent, and that he intended to schedule against the executions then in the hands of the sheriff in their favor. This question was presented to this Court in the case of *Sayre's Adm'r* v. *Harpold*, 33 W. Va. 553, (11 S. E. 16), where it was held that "the mere insolvency of a judgment creditor will not, of itself, justify an injunction against the enforcement of a judgment at law, in order to let in a set-off which might have been pleaded at law at the time such judgment was recovered." The plaintiffs in this case seek to excuse themselves for their failure to make their defense at law by filing and proving their set-off by alleging that they were mistaken as to the time when the matters upon which said Dawson's judgments are founded were passed upon by the circuit court on the common-law side. This fact, however, would not confer jurisdiction on a court of equity, as will be seen by reference to the case of *Shields* v. *Mc-Clung*, 6 W. Va. 79,—a case in which Haymond, president reviews the authorities bearing upon the point, and holds that "a party to whom a day and opportunity have been allowed to make his defense against a demand set up against him in a court of law, but who has wholly failed to avail himself of them, will not be entertained in a court of chancery on a bill seeking relief against the judgment which has been rendered against him in consequence of his default, upon grounds which might have been successfully taken in the court of law, unless some reason, founded in fraud, accident, surprise, or some adventitious circumstances beyond the control of the party, be shown why the defense was not made in that court." The excuse offered in that case for failure to make the defense at law was that the suit was brought in Greenbrier County; that the defendant resided in Kanawha County, and as soon as he was served with process he sought by letter to employ an attorney to defend his case, and thought he had done so, but was under a misapprehension as to the term at which the

case would be called for trial, and the attorney he had spoken to, not understanding that he had been definitely retained, failed to appear and make defense, and judgment was rendered against him. On this state of facts, this Court held the defendant was not entitled to equitable relief. To the same effect, see *Knapp* v. *Snyder*, 15 W. Va. 434; *Alford* v. *Moore's Adm'r*, Id. 597; *Meem* v. *Rucker*, 10 Gratt. 506. See also, *Hudson* v. *Kline*, 9 Gratt. 379, where it was held (first point of syllabus): "In an action at law, the defendant is prevented by unavoidable accident from setting up offsets which he held against the plaintiff, these offsets being in no way connected with the debt sued upon. He has, however, a plain remedy at law for the recovery of his claims. Held, he is not entitled to enjoin the judgment, and set up his offsets against it, but must pursue his remedy at law for their recovery." In that case Hudson had employed counsel to make his defense, and was taken suddenly ill while in the town in which the court house was located, and could not for that reason appear, and yet this state of facts was not considered sufficient to allow him to go into equity for relief. The case of *Faulkner's Adm'x* v. *Harwood*, 6 Rand. (Va.) 125, is quoted with approval by Lee, J., in *Slack* v. *Wood*, 9 Gratt. 43. In the first named case it was held that, "after a trial at law, a court of equity will not grant a new trial merely because injustice has been done, but the party applying for the new trial must show that he has done everything that could be reasonably expected from him to obtain relief at law." In the case at bar the appellees had been summoned, and were in court, and should have informed themselves as to the time the case would be heard, and their failure to do so affords no valid excuse for omitting to put in their defense at law. That one judgment may be set off against another, and the larger one discharged *pro tanto*, see *Skirne* v. *Simmons*, 36 Ga. 402; also *Scott* v. *Rivers*, 1 Stew. & P. 24, where it was held that "courts of law, in the exercise of legitimate and incidental powers, have authority to authorize the set-off of one judgment against another, existing between the same parties in the same court." The practice in this matter of setting off judgments is indicaed in 2 Freem. Judgm. § 467, where it is said: "The satisfaction of a judgment may be wholly or partly produced by compelling the judgment

creditor to accept in payment a judgment against him in favor of the judgment debtor, or in other words, by setting off one judgment against another. This is usually brought about by a motion in behalf of the party who desires to have his judgment credited upon, or set off against a judgment against him. The court, in a proper case, will grant the motion. Its powers to do this cannot be traced to any particular statute, and exists only in virtue of its general equitable authority over its officers and suitors,"—citing numerous authorities. See, also, Wat. Set-Off, §§ 345, 346.

Now, even if the plaintiffs were honestly mistaken as to the time when the action at law against them was to be heard, and for that reason failed to set off their judgments at the trial, yet here is a plain, complete, and adequate remedy at law, by which they could, on motion, have had their judgments set off against the judgment of plaintiff, Dawson, and for that reason they should not have been entertained in a court of equity. In the case of *Faulconer* v. *Stinson*, 44 W. Va. 549, (29 S. E. 1011), this court says: "But in *Sayre's Adm'r* v. *Harpold*, 33 W. Va. 553, (11 S. E. 16), it is held that mere insolvency of a judgment debtor will not alone justify an injunction to a judgment to let in a set-off which might have been pleaded; this seems well settled,"—citing High. Inj.·§ 132; Bart Ch. Prac. 22; *Hadson* v. *Kline, supra.* Barton, in his Chancery Practice (page 22), quotes from the opinion of Staples, J. (*Linke* v. *Fleming*, 25 Gratt. 707), as follows: "A very interesting question has been raised and discussed by the learned counsel in this case. It is whether the insolvency of a judgment creditor is a sufficient ground for a court of equity to decree a set-off against him upon which the debtor might have successfully relied by way of defense in the action at law, but which he failed to do, without any circumstances of excuse for such failure. This question has never been settled in this court, nor can it be considered as settled by the decisions of foreign courts." And Mr. Barton adds: "The generally received opinion is that where the party had his opportunity to the set-off at law, and gives no excuse for not having done so, the mere fact of insolvency will not entitle him to relief in equity against the judgment." In the case at bar the insolvency of Dawson cannot be regarded as material, for the reason that his

judgment was the largest, and the plaintiffs' judgments would only be set-off *pro tanto*; and, if the judgments had been set off at law, the plaintiffs could not have been injured by the insolvency of Dawson, as they would not have to resort to Dawson's property for any balance.

Applying these principles to the facts in this case, my conclusion is that the mere insolvency of Dawson, in the circumstances, did not entitle the plaintiffs to relief in equity. Neither was the excuse offered to account for their failure to plead their judgments as a set-off in court of law sufficient to entitle them to the relief prayed for. The court erred in overruling the demurrer to the plaintiffs' bill, and perpetuating the injunction. The decree complained of is therefore reversed, and the bills dismissed.

*Reversed.*