# CHARLESTON.

IRON COMPANY v. QUESENBERRY.

Submitted June 25, 1901. Decided December 7, 1901.

1. BILL IN EQUITY—*New Trial—Defense.*

 A bill in equity to set aside a judgment and obtain a new trial must allege facts showing a valid legal defense to the original cause of action, in addition to the mistake or other ground of relief, and the defense stated must be of such a nature that it would be likely to change the result upon a new trial. The mere general statement that a party has a valid defense will not do. (p. 455).

2. PLEADING—*Facts*.

    In a pleading a statement of what is only a conclusion of law, without facts given, or what is only the opinion of the party on facts not given, is bad. (p. 456).

Appeal from Circuit Court, Summers County.

Bill by the Longdale Iron Company against George W. McVey, Quesenberry, and others. Decree for defendants, and plaintiff appeals

*Affirmed.*

BROWN, JACKSON & KNIGHT and ST. CLAIR, WALKER & SUMMERFIELD, for appellant.

MILLER & READ, for appellees.

BRANNON, PRESIDENT:

Longdale Iron Company filed its bill in the circuit court of Summers County against Quesenberry for the purpose of setting aside a judgment which Quesenberry had recovered against said company in that court, and to obtain a new trial of the action of *assumpsit* in which the judgment had been rendered. An injunction against the judgment was awarded. Quesenberry answered, after he had demurred to the bill; and the decree pronounced was one dissolving the injunction and dismissing the bill, and said company took this appeal.

The sufficiency of the bill arises on the demurrer. The bill asks on certain grounds that the judgment be enjoined and set aside and a new trial granted for certain reasons based on facts outside the record of the judgment. The first question presenting itself is whether this bill is not fatally defective in failing to show the existence of a valid defense against the demand of Quesenberry in his action at law. Among the questions arising in the case of *Grafton & G. R. Co.* v. *Davisson,* 45 W. Va. 12, was the question whether the case showed error in the judgment complained of good to sustain a *certiorari,* and it was indicated that the case must show such ground of *certiorari.* In the present case the bill does not state and show that the company had an available, valid defense to defeat the action of *assumpsit,* but simply contents its self with averring that the company "has a perfect and substantial defense to the claim of the said Quesenberry set up in said action, and if permitted to defend its inter-

ests therein, will be able to defeat the said Quesenberry in any recovery against it whatever." It does not say what that defense is, in what it consists. No specification or hint of the character of that defense is given, so as to enable the court to say whether or not the company had any substantial defense, or only desired a new trial merely for the repetition of the same judgment. Ought a court of equity do a vain, useless thing? Ought it march up the hill only to march down again? Why should a court of equity be asked to deprive a party of his judgment at law, and compel him to try his case over again, without some showing that upon another trial a different result will be had, or will probably be had? I find a flood of authorities to sustain this position. "The ground upon which relief in equity against a judgment is commonly justified is, that the complainant had a cause of action or defense, of the benefit of which he was deprived in the original action, under circumstances which make it inequitable for the prevailing party to enforce the judgment; and if this is the only ground upon which the claim for relief can rest, it must be denied, unless the complainant shows he had some cause of action or of defense, or at least, had there been a fair trial, that the judgment would probably have been more favorable to him." 2 Freem. on Judgments, s. 498. He must show the judgment unjust. 1 Black on Judgments, s. 393; 3 Pom. Eq., s. 1364. In 3 Pomeroy's Eq., s. 1364, it is said that he "must have a valid legal defense on the merits." See note 1 to last section, citing many authorities for this proposition. As a bill in equity asks this relief, it must state that valid defense, and "one of such a nature that it would be likely to change the result upon the trial of the issues." 11 Ency. Pl. & Prac. 1192. "As in every case where equitable relief is sought against a judgment, the bill should set out clearly and in detail all the facts necessary to constitute a ground for equitable relief because of a pretermitted legal defense. General statements and inconclusive or ambiguous allegations are insufficient in setting up either a valid legal defense or matter in excuse for not defending at law." 11 Ency. Pl. & Prac. 1187; *Hale* v. *Railroad Co.,* 23 W. Va. 454; *Pyles* v. *Co.,* 30 W. Va. 123. The averment of this bill that the company has a perfect and substantial defense to Quesenburry's claim, without a hint as to what that defense is, is simply a general statement based on no stated facts, the mere opinion of the plaintiff as to the validity of its defense on

facts known to it, but not presented to the court to enable it to say whether those facts constituted a defense.    This general statement is nothing but a conclusion of law.

The bill is also objectionable in that material averments are stated upon information and belief, whereas they should be positive.    High on Injunc., s. 34; 1 Barton's Chy. Pr. 430.    The bill being thus defective, we need go no further; but I may add that in order to reverse the decree we will have to overrule the circuit judge in passing on evidence that is conflicting.    I do not mean evidence touching the validity of any defense of the company against the demand of Quesenberry; for there is no indication of what that defense is in the bill; but when I speak of conflicting evidence I mean that touching the excuse given for not presenting the company's defense on the trial at law.    There was a judgment by default against the company at one term of the court which was set aside by consent; at another term the case seems to have been continued without opposition from either side; at the next it was continued by reason of the sickness of the company's counsel; and at the next term a judgment was rendered upon a trial in the absence of the defendant and its sole counsel.    It is to the rendition of judgment in the absence of the company and its counsel, that complaint is made.    On the one side are two witnesses who state that a distinct understanding was had between counsel on both sides that the trial should occur on the 2d of February, and that on that day it was postponed to the 12th day of February under the distinct understanding that the case would be then tried, and that no further delay would be agreed to by Quesenberry's counsel, and that no continuance would be had except upon cause shown.    The counsel for the company and another witness deny that any day was fixed, or that it was agreed by counsel to try it on the 12th day of February, and say that the agreement was that if the counsel of the company could get through with a certain case in which he was counsel, tried in the criminal court of Kanawha County, in time, and that if a certain person, McGuffin, who was expected to be used as a witness, and who was then confined to his room with an ailment of the foot, should be in condition to attend, then the case might be then tried, but that the 12th day of February was simply discussed as a day for the trial, and that the real understanding was that the date for trial was thereafter to be agreed upon by counsel.    Here is direct conflict as to the day

fixed upon, and the burden of proof resting on the company.
If there was in fact a misunderstanding, by defendant's counsel,
it was the company's own misfortune, not the fault of Quesen-
berry, and not ground of new trial in equity. *Zinn* v. *Dawson*,
47 W. Va. 45. The counsel of the company knew before the 11th
day of February that Quesenberry would insist upon a trial on
the 12th, because he requested another lawyer to state to Quesen-
berry's counsel and to the judge of the circuit court of Summers
that he was engaged at Charleston in the trial of an important
case, and that he requested that the case be either continued from
the 12th to 14th or 15th of February. This attorney on arriving
at the Summers circuit court, did as requested, when Quesen-
berry's attorney stated that he would insist upon a trial at that
term, but with the assent of the court postponed the trial until
the 14th or 15th of February. The judgment was rendered on
the 15th day of February. Now, if we are told that the counsel
for the company was engaged in the trial at Charleston through
all the day of the 15th of February, it may be replied that the
Quesenberry case, under the evidence, was set for trial before the
case at Charleston; and furthermore that the party should have
prepared an application, based on the counsel's inability to at-
tend the Summers court by reason of his engagement in the
Kanawha court, for a continuance of the case. 1 Barton's
Chancery Prac. 49. If the sickness of McGuffin be suggested as
ground for a new trial, the answer is that his absence should
have been presented as a ground for a continuance, and on its
failure, then as ground for new trial. It will not do to say that
the absence of counsel would explain why a continuance or new
trial was not asked; for as to a motion for a continuance or new
trial other counsel could have been employed to act. The counsel
of the company and the superintendent of the company knew a
good while before the trial that the company's attorney was
engaged to attend the Kanawha court, and that he was actually
tied down in the trial in the latter court, and provision should
have been made for presenting this fact, as well as the sickness
of this witness, to the Summers court, and obtain a continuance
or a new trial, and on failure to obtain such continuance or
new trial, the case could have been appealed. When by proper
steps, in the law court the party might have obtained a contin-
uance or a new trial, and if they should be improperly refused,
he could by appeal get relief, and he takes no such steps, equity

will not interfere. *Railway* v. *Ryan,* 31 W. Va. 364; 2 Freem. Judgments, s. 497; Note 19 Am. Dec., p. 609; High, Injunc., s. 610; *Yancey* v. *Downer,* 15 Am. Dec. 35. I do not see how the absence of counsel with such long notice that trial would be asked at that term of court, and a knowledge that the case in Kanawha was coming on, can call for a new trial. He had either to choose one case or the other, and if he chose the Kanawha case, provision should have been made for the other case by the employment of other counsel for its trial, or at least seek a continuance or a new trial in the court of law. Can we say that Quesenberry could be placed under any obligation to wait for the counsel, especially as the court was discharging the jury and closing the term? If the detention of counsel in the Kanawha trial, or the sickness of McGuffin, would not be good ground for a continuance or new trial or writ of error, the proper processes, neither will they be good ground to overthrow the judgment in a court of equity. The case had been long on the docket. The company's counsel and superintendent knew that Quesenberry was pressing a trial of the case, and this called for vigilance. If the bill were good, the only close point in the case would be this, that while the company's attorney was engaged in the Kanawha trial, being informed by letter from Quesenberry's attorney that he would insist upon a trial on the day named in the letter, likely the 12th, the company's attorney asked another attorney, who was going to the Summers court, as above stated, to have the case postponed until the 14th or 15th of February, and that this attorney promised to let him know the result, and this attorney says that his recollection is that Quesenberry's attorney, when the case was passed to the 14th or 15th, promised to let the company's counsel know. He did not do so. The company's attorney says that he received a dispatch from the attorney whom he engaged to get the postponement, stating that the case had been continued. Likely the company's attorney is honestly mistaken in this, because the attorney who asked a postponement did not ask a continuance, and is explicit to say that Quesenberry's counsel flatly declined to continue, and that only a postponement was allowed, rendering it highly improbable that he would send a dispatch stating that a continuance had been allowed, and moreover, this attorney and his partner and their clerks, the only parties from whom the dispatch could have come, say they did not send such a dispatch, and it is not found at the tele-

graph office, though it is said that it is not the practice to retain dispatches longer than six months. If we could say, as a clearly proven fact, that such misleading dispatch was sent, it would seem to be a strong ground for a new trial; but under the evidence we cannot assert it as a fact and overrule the decision of the circuit court. If Quesenberry's counsel did promise to let the counsel for the company know of the postponement of the trial, then we must reply that the company's counsel was not informed of this promise, and was not misled thereby, and that he was already fully informed that no continuance could be had, and he could not let his diligence depend upon information from Quesenberry's counsel. We must not forget that it is a rule of equity jurisprudence not to interfere with judgments of law courts, except under very special circumstances, and that the ground upon which relief is based must be fully and clearly established, and that the action of the party complaining must be unmingled with any want of diligence. 19 Am. Dec. 603; *Smith* v. *McClain,* 11 W. Va. 654; *Harner* v. *Price,* 17 W. Va. 523. Therefore we affirm the decree.

*Affirmed.*