# CHARLESTON.

## LAW *v.* RICH *et al.*

Submitted February 5, 1900—Decided March 31, 1900.

1. CORPORATION—*Surrender—Franchise—Dissolution.*
    A resolution by the stockholders of a joint-stock company to discontinue its business under section 56, chapter 53, Code 1891, operates as a voluntary surrender of the corporate franchise, and a dissolution of the corporation.   (p. 635.)

2. EQUITY JURISDICTION—*Statute.*
    Equity has no jurisdiction, except as authorized by statute, to dissolve a corporation.   (p. 636).

3. CORPORATION—*Receiver—Bill—Jurisdiction.*
    When a dissolution of a joint-stock corporation has been made by resolution of its stockholders, under section 56, chapter 53, Code 1891, if a creditor asks a court of chancery to administer its assets through a receiver or otherwise, the bill must state, as a basis of jurisdiction, the failure of the corporation to provide ample funds to sufficiently secure the debts of the corporation, as required by that section.   (p. 637).

4. CESSATION OF BUSINESS NOT DISSOLUTION.
    A mere cessation, or suspension, or discontinuance by a corporation of its corporate business, unless by resolution of its stockholders to discontinue business, will not operate as a dissolution of a corporation.   (p. 637.)

Appeal from Circuit Court, Ritchie County.

Bill by M. L. Law, against Fred Rich and the Oriole Oil and Gas Company.   Decree for defendants, and plaintiff appeals.

*Affirmed.*

DAVIS & WOODS, for appellant.

SMITH D. TURNER, for apellees.

BRANNON, JUDGE:

M. L. Law, made a lease July 19, 1895, to Fred Rich, of land for oil and gas develoment, which lease was assigned

by Rich to the Oriole Oil and Gas Company, a corporation. Law, claiming that under the terms of said lease some money was due him for rent, brought a suit in equity in the circuit court of Ritchie County against Rich and the said Oriole Company to enforce said debt against certain property owned by that company in Ritchie County. The defendants demurred to the bill and amended bill, assigning as cause of demurrer want of jurisdiction in equity to entertain the suit. The Oriole Oil and Gas Company also answered. The court held that the bill showed no equity, and dismissed the case. Law appeals.

There are several questions of importance in the construction of the lease which it would be proper to discuss if there were jurisdiction in equity, but, as we hold there is not, it is improper to discuss them in this suit, and they are left in-tact now for consideration in another suit properly involving them. This is a suit for money claimed as rent under said lease, purely a money demand, proper for a law court. The only ground upon which the bill predicates jurisdiction in equity is the allegation that "said Oriole Oil and Gas Company resolved to discontinue its business as a corporation under the laws of this State on the 8th day of February, 1897, a long time after said debt had become payable." At the start I will say that a general equity jurisdiction cannot be appealed to as warrant to dissolve a corporation. "Courts of equity have no general jurisdiction to decree the dissolution of a corporation by a forfeiture of its franchises. and therefore cannot exercise such a power, unless given by statute." 9 Am. & Enc. Law (2d Ed.) 601; 5 Am. & Eng. Dec. Eq 128. Therefore, neither because of any inherent jurisdiction in equity nor because of a discontinuance of its business can equity take jurisdiction of this case. Nothing is pleaded as a ground of jurisdiction except the fact that the corporation had resolved to discontinue its business. Our statute (Code 1891, chapter 53, section 57) provides that not less than one-third in interest of the stockholders of a corporation may, by a suit in equity, obtain a decree of dissolution of the corporation by showing sufficient cause therefor. This is an additional power given courts of equity, but this bill cannot be sustained by that section. What effect has

the mere discontinuance of business by a corporation upon its corporate life? It does not operate alone as a dissolution. Nonuser—total nonuser—of the franchise does not do so. The State must, by a proper proceeding, have an adjudication of the fact of nonuser or misuser of the corporate charter, and of its consequent forfeiture and dissolution, before the life of the corporation ends. *Moore* v. *Schoppert*, 23 W. Va. 282; *Lumber Co.* v. *Ward*, 30 W. Va. 43, (3 S. E. 227); 9 Am. & Eng. Enc. Law (2d Ed.) 563, 574. But it is clear law that the mere suspension or discontinuance of business by a corporation will not destroy its life. The discontinuance or suspension may be temporary, often advisable for the interests of the stockholders. The State may step in, if the public is injured, and take away the charter for such a discontinuance of its business as is misuser or nonuser. Our Code, chapter 53, section 7, tolerates a suspension of business for two years, and declares that a longer suspension shall operate a forfeiture of corporate rights and privileges; says they shall cease. But that forfeiture must be enforced by the State, not by an individual. All this shows that mere discontinuance of business does not alone dissolve a corporation. It does not authorize a creditor to avail himself of jurisdiction in equity to have the assets administered for the benefit of creditors, as in the case of a dissolved corporation. A discontinuance of business does not dissolve, nor even an assignment for the benefit of creditors. 5 Thomp. Corp. §§ 6619, 6664, 6482. We have a provision, however, in Code 1891, chapter 53, section 56, authorizing stockholders in general meeting by resolution of a majority of the capital stock voting for it to discontinue business. What is the effect of such a resolution? Does it merely discontinue the business temporarily? Or is it a final dissolution? It is well-settled corporation law that a corporation may be dissolved by the surrender of its franchises, and this is done, not by the directors, but by a majority of the stockholders. 9 Am. & Eng. Enc. Law (2d Ed.) 546; Cook, Corp. § 629. That is a common-law power. The stockholders—the owners—may give up the boon granted them by surrendering it to the hand that gave the corporate life. I interpret section 56, above referred

to, as a statute declaratory of this common-law power. It is true it uses the words "discontinue the business of the corporation," and does not use the word "dissolve"; and it is true that under the general law a mere discontinuance of business does not dissolve the corporation, as stated above; but I notice that the section has above it the words, "Of the Voluntary Dissolution of a Corporation," which leads me to the conclusion that a resolution passed under that section, by a majority in interest of the stockholders, would operate as the common-law surrender of the franchise, and extinguish the corporation. I notice that the author of the late valuable collection of West Virginia corporation statutes, "Chilton on West Virg'nia Corporations," is of the same opinion, as indicated by the form of resolution of dissolution (page 87). I understand such to be JUDGE JOHNSON's opinion in *Pyles* v. *Furniture Co.*. 30 W. Va. 143 (2 S. E. 909). Inasmuch as the statute itself denominates such a resolution a "voluntary dissolution," and provides for the division of the assets after payment of liabilities, I conclude that such a resolution is a surrender and end of the franchise. But this bill does not aver anything but a discontinuance of business. Though it avers that the company resolved to discontinue it, yet it does not say whether the stockholders or directors had adopted a resolution. Only the stockholders could pass such a resolution. A mere cessation of business, without resolution by the stockholders, would not operate a dissolution. The bill does not state the facts clearly and distinctly constituting actual dissolution. If it did, there would be jurisdiction for one creditor to ask the appointment of a receiver to take charge of and administer the assets of the corporation under Code, chapter 53, section 58. Further, the bill does not say that the stockholders passed any resolution of dissolution, without which equity would not have jurisdiction. The most that can be said for the jurisdiction in equity is that the bill means to so charge. This is to ask the Court to presume the existence of such a resolution; but on that hypothesis the bill should go on to say that the stockholders and directors had failed, as required by section 56, to make provision for the payment of debts, for it is only in the event that no such provision

has been made or that inadequate provision has been made, by the stockholders for the payment of debts, that said section 56 allows a creditor to go into chancery. That section contemplates, along with section 58, that it is only when the corporation has failed, upon voluntary dissolution, to properly devote its assets to the payment of debts, that it shall be involved in litigation. Therefore, we affirm the decree, but without prejudice to any party to the cause in any other suit touching the matters mentioned in the record.

*Affirmed.*