SOUTHWESTERN INVESTMENT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Dockets Nos. 30567, 32053, 35787. Promulgated February 26, 1930.

*John J. Finnorn, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, and *C. A. Ray, Esq.*, for the respondent.

36

38

40

OPINION.

McMAHON: The hearing of these proceedings was limited, by order, to the question of the statute of limitations.

At the hearing the respondent admitted that assessment and collection of the deficiency in taxes for the fiscal year ended January 31, 1919, covered by Docket No. 32053 are barred by the statute of limitations. Judgment, therefore, will be entered that there is no liability on the part of the petitioner for that year.

There remains, for consideration, the question whether or not the liability of petitioner for the income and profits taxes of the New Orleans Naval Stores Co., Inc., for the fiscal year ended January 31, 1920, and the period February 1, 1920, to July 15, 1920, included under Docket No. 30567, and for the fiscal year ended January 31, 1921, included under Docket No. 35787, is barred by the statute of limitations from assessment and collection.

The evidence discloses that on August 16, 1920, a meeting of the stockholders of the New Orleans Naval Stores Co., Inc., was held for the purpose of dissolving the company. Practically all of the outstanding stock of the company was represented at this meeting. It was resolved that the company cease to do business as and from September 1, 1920. J. A. Taylor, L. V. Pringle, and G. F. Mason were appointed liquidators of the affairs of the corporation and were authorized to act by a majority vote. A copy of the minutes of this meeting was filed with the Secretary of State of the State of Louisiana on October 28, 1920. The petitioner, as principal stockholder, took over the assets of the New Orleans Naval Stores Co., Inc., on January 31, 1921.

The return of the New Orleans Naval Stores Co., Inc., for the fiscal year ended January 31, 1920, was filed on or about May 15,

1920, and its return for the fiscal year ended January 31, 1921, was filed on or about May 17, 1921.

Section 277 of the Revenue Act of 1924 provides:

(a) Except as provided in section 278 and in subdivision (b) of section 274 and in subdivision (b) of section 279—

(1) The amount of income, excess-profits, and war-profits taxes imposed by the Revenue Act of 1921, and by such Act as amended, for the taxable year 1921 and succeeding taxable years, and the amount of income taxes imposed by this Act, shall be assessed within four years after the return was filed, and no proceedings in court for the collection of such taxes shall be begun after the expiration of such period.

(2) The amount of income, excess-profits, and war-profits taxes imposed by the Act entitled "An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes," approved August 5, 1909, the Act entitled "An Act to reduce tariff duties and to provide revenue for the Government, and for other purposes," approved October 3, 1913, the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, and by any such Act as amended, shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period.

Section 278 (c) and (d) of the Revenue Act of 1924 provides:

(c) Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment of the tax may be assessed at any time prior to the expiration of the period agreed upon.

(d) Where the assessment of the tax is made within the period prescribed in section 277 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax. Nothing in this Act shall be construed as preventing the beginning, without assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the period within which an assessment may be made.

It is clear that, under the above provisions of the Revenue Act of 1924, the time within which assessment and collection of any taxes against and from the New Orleans Naval Stores Co., Inc., for the fiscal year ended January 31, 1920, might be made, expired on or about May 15, 1925, while the time with regard to the fiscal year ended January 31, 1921, expired on or about May 17, 1925, unless the time was extended by consents in writing referred to in section 278 (c) above.

The petitioner had made a *prima facie* case by showing that the time provided in the revenue acts for the assessment and collection of taxes against and from the New Orleans Naval Stores Co., Inc., had expired at the time the notices were sent by the respondent. The burden then shifts to the respondent to establish that there is an exception to the running of the statute. *Farmers Feed Co.*, 10 B. T. A. 1069; *Bonwit Teller & Co.*, 10 B. T. A. 1300; and *Jonathan Godfrey*, 18 B. T. A. 775.

In *Jonathan Godfrey, supra,* we stated:

The return of the taxpayer corporation for the year 1918 was filed not later than July 22, 1919. The assessment of $83,682.40 was made on November 10, 1925, more than five years thereafter. These facts are *prima facie* evidence in support of the petitioners' pleaded allegation of error that the assessment was made after the taxpayer corporation's liability for additional tax for the year 1918 had been tolled by the statute of limitations. In these circumstances the respondent must prove that the agreements which he pleads and upon which he relies were actually entered into by the parties and that such agreements are valid and effect an extension of the statutory period within which he has authority to assess. *Farmers Feed Co.,* 10 B. T. A. 1069; *Bonwit Teller & Co.,* 10 B. T. A. 1300; *Carnation Milk Products Co.,* 15 B. T. A. 556. The agreements were introduced as evidence by the petitioner, and are included in our findings of fact. It remains only to determine whether such agreements were properly executed by the corporation or its agents legally authorized to bind it by their acts.

The respondent submitted in evidence three written instruments which purported to be consents in writing to later assessments of taxes.

On April 3, 1925, an instrument in writing signed " New Orleans Naval Stores Co., Inc., taxpayer, by W. B. Gillican, President " and " D. H. Blair, Commissioner," was executed purporting to waive the time prescribed by law for making any assessment of the amount of income, excess-profits or war-profits taxes due under any return made by or on behalf of the New Orleans Naval Stores Co., for the fiscal years ended January 31, 1920 and 1921. This waiver provided that it should remain in effect until December 31, 1925.

Under date of December 10, 1925, an instrument in writing signed " New Orleans Naval Stores Co., taxpayer, by W. B. Gillican, President " and " D. H. Blair, Commissioner " was executed purporting to waive the time prescribed by law for making any assessment of the amount of income, excess-profits or war-profits taxes due under any return made by or on behalf of the New Orleans Naval Stores Co. for the years ended December 31, 1920, and December 31, 1921. This waiver provides that it should remain in effect until December 31, 1926.

On March 10, 1926, an instrument in writing signed " New Orleans Naval Stores Co., taxpayer, by W. B. Gillican," and " D. H. Blair, Commissioner " was executed purporting to waive the time prescribed by law for making any assessment of the amount of income, excess-profits or war-profits taxes due under any return made by or on behalf of the New Orleans Naval Stores Co. for the years ended January 31, 1920, and period February 1, 1920, to July 16, 1920, and period July 16, 1920, to January 31, 1921. This waiver provided that it should remain in effect until December 31, 1926.

It will be noted that the instruments in writing were signed by W. B. Gillican, as president of the New Orleans Naval Stores Co.,

several years after the stockholders of that company had voted for dissolution. Our primary question is whether Gillican, under the law of Louisiana, had authority to bind the New Orleans Naval Stores Co., Inc., by these instruments.

Act 267 of the General Assembly of the State of Louisiana, 1914, provides:

DISSOLUTION. Sec. 28. That whenever in the judgment of the Board of Directors it shall be deemed advisable, and for the benefit of such corporation, that it should be dissolved, the Board within ten days after the adoption of a resolution to that effect, by a majority of the whole board, at any meeting called for that purpose, of which meeting each director shall have received at least three days' notice shall cause notice of the adoption of such resolution to be mailed to each stockholder, together with a notice of a meeting of the stockholders to be held at the office of the corporation, to take action upon the resolution so adopted by the Board of Directors. The meeting of the stockholders shall be held at any hour fixed by the Board of Directors, between the hours of 10 o'clock in the forenoon and 3 in the afternoon of the day so named. On the day so appointed the meeting may, by consent of the majority in interest of the stockholders present, be adjourned from time to time, and if, at any meeting original or adjourned, two-thirds in interest of all the stockholders of the corporation shall vote that a dissolution shall take place, a certified copy of such resolution, signed by the presiding officer and secretary of the meeting, shall be filed in the office of the Secretary of State, together with a list of the names and residences of the directors and officers, certified to by the president and secretary of the corporation. Thereupon, the Secretary of State, when satisfied by due proof that the requirements aforesaid have been complied with, shall issue a certificate that the foregoing documents have been filed. The corporation shall then stand dissolved and the board shall publish a notice of said dissolution not less than 3 times in a paper published in the parish of the corporation's domicile, and the corporation shall proceed to settle up and adjust its business and affairs.

Whenever all the stockholders shall consent, in writing, to a dissolution, no meeting or notice thereof shall be necessary; but on filing such consent in the office of the Secretary of State, he shall forthwith issue his certificate, and thereupon the matter shall be proceeded with as if the dissolution had taken place at a meeting called for the purpose.

\* \* \* \* \* \* \*

LIQUIDATION. Sec. 30. Be it further enacted, etc., That a corporation dissolved under this act shall be extinct in all respects as if its corporate existence had expired by limitation of its charter.

All corporations, whether they expire by limitation or are otherwise dissolved, shall be continued as bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to liquidate their affairs, to dispose of and convey their property and to divide their capital but not for the purpose of continuing the business for which they were established.

(a) Upon the dissolution in any manner of any corporation the stockholders shall elect from among their number one or more liquidators (which liquidators, if required by the holders of not less than twenty-five per cent. of its stock, shall furnish bond not greater than the appraised value of the assets), with full power to settle its affairs, collect the outstanding debts, sell and convey

the property, pay its debts and divide the remaining money and property among the stockholders. They shall have power to meet and act under the by-laws of the corporation and under regulations to be made by a majority of said liquidators; to fix the price and prescribe the terms and conditions of the sale of such property and the manner in which the sale shall be made, and take notes and bonds, secured by mortgage or otherwise, for part of the purchase price for all or any part of said property; provided, however, that the rights here conferred upon the liquidators may be modified, changed or denied by a majority of the shares of the capital stock of the corporation.

(b) The liquidators shall have authority to sue for and recover the debts and property in the name of the corporation, and may be sued by the same name, and citation may be served upon any one of them, and they shall be liable in solido to any creditor or stockholder for the moneys and property of the corporation which shall come to their hands or possessions as such liquidators, and for the proper application and distribution thereof.

(c) Where any corporation shall be dissolved in any manner whatever, any court of competent jurisdiction, may, at any time, on application of any creditor, or stockholder, and for good reasons shown, order that the liquidators so appointed by the stockholders, shall qualify as judicial liquidators, and liquidate the affairs of said corporation under the orders and decrees of the court, and upon the failure or refusal of said liquidators so to do, the court may appoint one or more persons to be the receivers, of such corporation, to take charge of the estate and effects thereof, and to liquidate and settle the business and affairs of the company with such powers and duties as the court, by its orders and decrees, from time to time, may grant or impose.

DEFINITIONS. Sec. 31.

\* \* \* \* \* \* \*

A " Creditor " of a corporation is one who has a right by law to demand either presently, or upon some future contingency the fulfillment of any obligation or contract, not arising from an offense or quasi offense.

\* \* \* \* \* \* \*

The evidence shows that the New Orleans Naval Stores Co., Inc., has complied with all the requirements of the above statute for its dissolution except the publication of notice in a paper. There is no evidence showing whether or not this was done, nor was there any evidence to show that the Secretary of State of the State of Louisiana issued, previous to June 13, 1929, a certificate showing that the documents required to be filed had been filed. However, these requirements were merely directory and are not necessary to the dissolution of the company.

In 14 (A), Corpus Juris, sec. 3753, p. 1129, it is said:

Where the statute prescribes the steps to be taken by the stockholders, those steps must of course be followed by stockholders proceeding under the statute, and the facts showing compliance and essential to the exercise of jurisdiction must appear on the record of the court in order to sustain a decree of dissolution. But it is necessary to discriminate between those steps which are made by the statute essential to effect the surrender and other collateral steps which are merely directory; if all steps essential to effect the surrender are taken, a dissolution will be allowed even though other requirements merely directory are not complied with.

In *American Bank* v. *Cooper*, 54 Me. 438, it was held that where the essential steps for the surrender of the charter are taken in compliance with the statute, except the publication of notice, the surrender is effectual.

In the case of *Law* v. *Rich*, 47 W. Va. 634; 35 S. E. 858, the Supreme Court of Appeals of West Virginia held that a resolution by the stockholders of a joint-stock company to discontinue its business, under section 58, chapter 53, code 1891, operates as a voluntary surrender of the corporate franchise, and the dissolution of the corporation. The section of the statute referred to authorized stockholders in a general meeting, by resolution of the majority of the capital stock voting for it, to discontinue business.

We conclude that the New Orleans Naval Stores Co., Inc., was dissolved on October 28, 1920, when the required papers were filed with the Secretary of State of the State of Louisiana. Neither party presses this issue.

Neither of the parties involved in this proceeding has cited any case decided by the courts of Louisiana involving the question of the powers of corporations after dissolution, or the powers of its officers or liquidators under the Louisiana act, nor have we been able to find any such case.

The petitioner cited the case of *Bank* v. *Wilson*, 19 La. Ann. 1, 3, which was decided in 1867 and in which the Supreme Court of Louisiana stated:

If, as held by the plaintiff, the corporation still has vitality, and retains its capacity to sue and be sued, there would seem to be an anomaly growing out of the existence, at the same time, of a corporation and commissioners to liquidate its affairs, both having the power to control its assets, and equally in the power to exercise all of its rights of acting in courts of justice. But no such anomaly we apprehend exists.

In that case a banking corporation was in liquidation under an order of General Banks which was issued during the military occupation of New Orleans by the Federal armies. Under this order all of the property, assets and affairs of the banking corporation were placed under the control and management of commissioners of liquidation as provided for by law in insolvencies of individuals.

Another case cited by petitioner is *Jeanerette Rice & Milling Co.* v. *Durocher*, 123 La. 160; 48 Sou. 780. In that case it was held that where all of the property of a Louisiana corporation has been sold and its affairs are being liquidated by the board of directors, the president of the corporation is not authorized to bring a suit on behalf of the corporation. This case was decided in 1909, which was prior to the passage of Act 267 of Louisiana, invoked in this proceeding, but we deem it authority to the effect that, after the dissolution of a corporation, the only persons who may act on its behalf are those charged with the duty of winding up its affairs.

Under this Act (267), parts of which we have set forth hereinbefore, the only persons competent to act on behalf of the New Orleans Naval Stores Co., Inc., in winding up its affairs after dissolution were the liquidators.

In *Jonathan Godfrey, supra,* we had under consideration a somewhat similar situation. In that case the law of Connecticut, which is somewhat similar to the law of Louisiana, was involved. We held that where a corporation was dissolved in accordance with the state law, which places its affairs in the hands of its directors, as liquidating trustees, its president, who was also one of the liquidating directors, had no authority to bind the corporation by signing a waiver of the statute of limitations. See also *Bamberg Cotton Mills Co.*, 8 B. T. A. 1236.

As previously stated, the instruments in writing which respondent has introduced in evidence and which purport to be waivers of the statute of limitations are signed by W. B. Gillican as president of the New Orleans Naval Stores Co., Inc. At the time these instruments were executed the New Orleans Naval Stores Co., Inc., had long since been dissolved and two of the liquidators of the New Orleans Naval Stores Co., Inc., Mason and Pringle, were alive. It is true that the name of Mason, one of the liquidators, appears upon the instrument dated April 3, 1925, but only as a witness. The respondent contends that this fact is proof that Mason consented and agreed to the execution of the consents in the manner and form executed. Respondent further contends that, in the absence of any protests or objections on the part of the other liquidator, the presumption is raised that such other liquidator acquiesced in the action of Mason. We are not favorably impressed with this view and can not accept it.

Respondent further contends that, under the authority of section 30 (a) of Act 267 of the Legislature of Louisiana, which we have set forth above, the powers of the liquidators were denied, modified or changed, after the liquidators were appointed, and that the purported waivers are valid. The petitioner advances the contention that the Legislature of Louisiana, in enacting the above section, merely intended to say that when a liquidator or liquidators are appointed it is not absolutely necessary that they be vested with each and every one of the powers enumerated in that section, but that those powers might be modified, changed or denied, and that such modification, change or denial must be set forth in the act of appointment at the time of dissolution. Respondent contended that this may be done subsequently and without formal action by the

stockholders. The question as to whether the powers of the liquidators may be at any time informally modified, changed or denied, is not free from doubt and we do not attempt to decide it since, in our view of the case, it is not necessary.

After a careful consideration of all the facts presented in the proceeding, we are of the opinion that the respondent has failed to show that the powers of the liquidators were modified, changed or denied or that W. B. Gillican was qualified in any manner to sign waivers of the statute of limitations on behalf of the New Orleans Naval Stores Co., Inc. He has, therefore, failed to establish that the alleged waivers relied upon by him are valid.

The respondent also contends that the petitioner is estopped to deny the validity of the consents here involved since it, by its officers, agents or employees intentionally deceived the respondent in the premises and thereby caused him to withhold assessments in reliance upon the consents.

In section 131, page 1129, of volume 21, Corpus Juris, there is set forth the following, which is well supported by authority:

As a corollary to the proposition that the party setting up an estoppel must have acted in reliance upon the conduct or representations of the party sought to be estopped, it is as a general rule essential that the former should not only have been destitute of knowledge of the real facts as to the matter in controversy, but should have also have been without convenient or ready means of acquiring such knowledge. One relying on an estoppel must have exercised such reasonable diligence as the circumstances of the case require. If he conducts himself with a careless indifference to means of information reasonably at hand or ignores highly suspicious circumstances which should warn him of danger or loss he cannot invoke the doctrine of estoppel. [Citing among other Federal cases, *Ft. Scott* v. *W. G. Eads Brokerage Co.*, 117 Fed. 21, certiorari denied; 187 U. S. 647.]

In *Brant* v. *Virginia Coal & Iron Co.*, 93 U. S. 327, 335, the Supreme Court stated with regard to the doctrine of equitable estoppel:

* * * For the application of that doctrine there must generally be some intended deception in the conduct or declaration of the party to be estopped, or such gross negligence on his part as to amount to constructive fraud, by which another has been misled to his injury. "In all this class of cases", says Story, "the doctrine proceeds upon the ground of constructive fraud or of gross negligence, which, in effect, implies fraud. And, therefore, when the circumstances of the case repel any such inference, although there may be some degree of negligence, yet courts of equity will not grant relief. It has been accordingly laid down by a very learned judge that the cases on this subject go to this result only, that there must be positive fraud or concealment, or negligence so gross as to amount to constructive fraud." 1 Story's Eq. 391.

In *Murphy* v. *Paine*, 15 Fed. (2d) 570, the question of estoppel arose in certain suits in admiralty. The court stated:

Estoppel may be invoked where conduct or statements have positively misled a party and are acted upon by him in good faith, to his prejudice. Where the conditions are known to the parties, or they both have the same means of ascertaining the truth, and where they are under a duty to ascertain the truth, there can be no estoppel. See *Oklahoma* v. *Texas*, 268 U. S. 252, 257, 45 S. Ct. 497, 69 L. Ed. 937, *Brant* v. *Virginia Coal & Iron Co.*, 93 U. S. 326, 335, 23 L. Ed. 927.

Gillican signed the consents as president of the New Orleans Naval Stores Co., and did not represent himself to be a liquidator. It is true that R. V. Whittaker, a public accountant employed by petitioner, represented to the internal revenue agent at the time such agent requested waivers, that there were no liquidators of the New Orleans Naval Stores Co., Inc., but this does not constitute such a misrepresentation as will work an estoppel against the petitioner. Whittaker was not acting in bad faith, since he did not know at the time that there were any liquidators. The agent, himself, testified that he knew at the time that by consulting the records of the Secretary of State of the State of Louisiana he could have learned whether or not there were liquidators. As a matter of fact, the petitioner, as early as May 9, 1924, informed the respondent by letter that the New Orleans Naval Stores Co., Inc., had been dissolved. At the time the respondent requested waivers he knew that the New Orleans Naval Stores Co., Inc., had been dissolved and he was not misled in any way by the petitioner. He had ample means of ascertaining the names of the liquidators, but apparently did not avail himself of such means. We conclude that the facts do not establish any estoppel against the petitioner.

The notices of the respondent of the proposals to assess the petitioner were written on June 22, 1927, and December 29, 1927. Over two years prior to those dates the statute of limitations had run against assessment and collection with regard to the New Orleans Naval Stores Co., Inc., and its liability was extinguished by section 1106 of the Revenue Act of 1926. At the time the notices were sent to petitioner assessment and collection of the taxes against and from it as transferee were also barred by the statute of limitations and its liability was extinguished. *Phil Gleichman*, 17 B. T. A. 147; *Marion Parsons Spencer*, 11 B. T. A. 437; and *D. E. Wheeler*, 16 B. T. A. 96.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

SMITH and BLACK dissent.